## CALDWELL *v.* ALLEY ET AL.

[No. 9,847. Filed May 29, 1919.]

1. APPEAL.—*Questions Presented.—Peremptory · Instructions.—Bill of Exceptions.*—Where no exception was taken to the giving of a peremptory instruction, but it appears from the record that the bill of exceptions containing the instruction, duly signed by the trial judge, was presented and filed within the time given for filing bills, though not filed until after the praecipe, there was a good-faith effort to comply with the rules of court, and questions arising on the instruction will be reviewed on appeal. p. 319.

2. NEGLIGENCE.—*Evidence.—Directing Verdict.—Duty of Court.*— In an action for wrongful death, if the evidence on any issue is insufficient in law to sustain a verdict in favor of plaintiff, it is the duty of the court to direct a verdict upon such issue against him. p. 319.

3. ELECTRICITY.—*Transmission of Electric Current.—Liability for Injuries.*—Where the furnisher of electricity supplies the same to a customer first through its own wires, and then through wires owned and maintained by the customer, and over which the furnisher has no supervision or control, he is not liable for injury resulting from the negligent manner in which the customer's wires are equipped and maintained. p. 321.

4. MUNICIPAL CORPORATIONS.—*Injuries to Persons.—Wrongful Act of Third Person.*—A city cannot be charged with constructive notice that a private party has placed a live wire where persons bathing in a stream under the city's control may come into contact therewith, in the absence of evidence showing how long the wire has been so located. p. 323.

5. MUNICIPAL CORPORATIONS.—*Injuries to Persons.—Wrongful Act of Third Persons.—Liability of City.*—Even though a city has full power and control over a stream wherein citizens are accustomed to bathe, it is not liable for the death of a bather electrocuted by coming in contact with a live wire negligently and maliciously placed by a third person, where the city had no notice of the existence of the wire. p. 323.

6. APPEAL.—*Presenting Questions for Review.—Refusal of Court to Require Witness to Testify.*—The court on appeal cannot determine whether the trial court's refusal to require a witness to answer questions propounded to him was harmful, even if erroneous, where the complaining party failed to make any statement of what he expected to prove by such witness. p. 323.

From Morgan Circuit Court; *A. M. Bain,* Special Judge.

Action by Emery B. Caldwell against Jesse L. Alley, doing business under the firm name and style of the North Side Sand and Gravel Company, and others. From an adverse judgment, the plaintiff appeals. *Affirmed.*

*Joseph W. Williams, Harry E. Negley* and *George W. Galvin,* for appellant.

*William A. Pickens, Paul G. Davis, Walter Meyers, Russel J. Ryan, Elmer E. Stevenson* and *Charles N. Thompson,* for appellees.

NICHOLS, P. J.—This is an action by appellant against the appellees to recover damages for the death of his son by electrocution in Fall creek, a stream running through the city of Indianapolis, Marion county, Indiana. The amended complaint upon which the appellant went to trial was in one paragraph. When the appellant closed his evidence appellee city of Indianapolis filed its motion to instruct the jury in its favor, and appellee Indianapolis Light and Heat Company filed its motion to the same effect. The appellant then dismissed the action as to defendant Alley. Each of the motions to instruct the jury was submitted to, and sustained by, the court, and thereupon the court instructed the jury to return a verdict in favor of each of the appellees, which the jury did, and the court rendered judgment in favor of each appellee, and against the appellant. The appellant filed his motion for a new trial, which was overruled, to which ruling of the court the appellant excepted, and now prosecutes this appeal. Overrul-

ing appellant's motion for a new trial is the only error relied upon for reversal.

The substance of so much of the complaint as is necessary for this decision is as follows: The defendant Alley for a long time prior to July 4, 1913, was excavating sand and gravel from the bed of Fall creek, a stream running through the city of Indianapolis, Indiana, at a point where Thirty-fourth street of said city, if extended, would cross the stream; that said city as such had full charge, control and supervision of said stream within the limits of said city. The appellee Indianapolis Light and Heat Company was engaged in furnishing to the citizens of said city an electric current generated within the city. On and prior to said July 4, 1913, said Alley, as a means of excavating sand and gravel from the bed of said creek, with the consent, approval and acquiescence of said city in its control and supervision of said stream, had constructed and was then maintaining and operating at said point on said creek certain buildings, boats, buckets, cables, masts, framework, wires and machinery of the sort that is commonly described as a gravel boat or gravel bucket outfit; that as a part thereof said Alley operated, with the consent, approval and acquiescence of said city, a barge or house boat consisting of a boat with an ordinary hull and a superstructure or small house built thereon, and in the center thereof. Said boat had a platform running around the outside of said superstructure about five or six feet wide at the ends of said boat. With the consent, approval and acquiescence of said city, said Alley had kept said boat moored in the waters of said creek at the above point, with the north end of the boat moored near to the

bank of said creek and the south end swinging loose,
all of which was well known to said city. Prior to
July 4, 1913, said Alley had entered into a contract
with appellee Light and Heat Company to deliver
him electricity from its plant and wires in said city,
and said appellee Light and Heat Company had ex-
tended its wires carrying the electric fluid generated
by it over and upon the boat, and had voluntarily
undertaken to deliver along and over its wires the
current of such electricity under its direction, super-
vision and control, and had full knowledge of the uses
to which said electric current was to be placed, and
the management, distribution and control of it, and
said appellees knew, or could have known, that said
electric current would be highly dangerous to life
and safety of any person coming in contact with the
wires through which it was conveyed where such wires
were not properly insulated or covered and protected.
Said current was a subtle and highly dangerous com-
modity under the most favorable conditions and when
guarded with the utmost care. Numerous citizens of
said city resorted to said point in said stream as a
bathing resort and swimming hole, and appellees
well knew at said date, and long prior thereto,
that such place was resorted to by men, women, boys
and girls in that vicinity as a bathing place, and that
it was so used with the consent, approval and acqui-
escence of said city; appellees, each of them, knew,
or could have known, that those engaged in bathing
or swimming in said creek were induced and encour-
aged by the presence of said boat and the ready access
thereto to use the platform thereof as a resting place
or a place from which to dive into the waters of said
stream, and they knew, or could have known, at said

time, because of the advancing heat of the summer, that many persons would be attracted to said place for the purposes aforesaid, and to the platform of the boat aforesaid for resting and diving. *That with such knowledge said Alley did prior to said July 4, 1913, wrongfully and unlawfully place or cause to be placed by his servants, and employes, acting for and on behalf of said defendant Alley, and in the line of their duty, on and around the outer edge of said boat and on the platform thereof above described, a wire then and there retained and held fast with staples in such a manner that the same could not be seen by a person in the water near said boat, and which wire was wrongfully and unlawfully placed by said Alley, or by his agents or employes at the time acting for and on his behalf, in the line of their duty at his direction for the sole purpose of having the same wrongfully and unlawfully charged with electricity from the current so furnished as aforesaid, in such a manner that when any person should touch the said wire he would receive an electric shock from the current conveyed by said wire. That said wire was so placed by said Alley and so ordered placed by him with a malicious aforethought, and with full intention to injure and maim any such person that might come in contact with it, wholly without regard for the possible injury which might be inflicted upon such person;* and, with full knowledge of the presence of said wire so charged as aforesaid, said Alley wrongfully and wilfully suffered and permitted said wire to remain in said condition with such wrongful, unlawful and wilful purpose as aforesaid, and some time prior to July 4, 1913, caused said wire to be connected with the wires previously run upon said boat, charged as

aforesaid, and upon said July 4, knowingly, wrongfully and unlawfully permitted said wire to carry a current of electricity so as aforesaid procured, and the said city knew, or by the exercise of reasonable care would have known, of the electric current being conveyed through said wire, but negligently and carelessly suffered the same to remain upon said boat, and negligently and carelessly permitted those in use of said stream to be endangered by the presence of said wire, and negligently and carelessly neglected to warn or guard the bathers in said stream; and appellee Light and Heat Company knew of the presence of the wire and the uses to which it was being put, but carelessly and negligently continued to furnish to said defendant Alley its electric current for such wrongful and unlawful use, and negligently and carelessly, with full knowledge of such use, suffered and permitted said current to flow through such wire in sufficient current to endanger the lives of those coming in contact with it, while it knew, or by the exercise of reasonable care could have known, that the bathers in said stream and those using the waters thereof would be in danger of their lives by the unguarded and unprotected electricity furnished by it and passing through such wires. That each of appellees knew of the presence of such boat and electricity in sufficient quantities to maim or kill one coming in contact therewith, and failed wholly to give notice of such electric fluid on said boat. Appellant's minor son, Earl Caldwell, was eighteen years of age, in good health, sound of mind and body, and earning the sum of $50 per month, which was paid to the appellant, his father, the son not being able to take care of it and the son being a member of appellant's family. While so

bathing, without any knowledge of the negligent and careless acts of said Alley and his codefendants, and of the location and existence of the wire aforesaid, which was then and there negligently and carelessly suffered and allowed by said defendants to be fully charged with electric current by the said Light and Heat Company, and without any notice whatever or warning, said decedent climbed upon said boat and placed his body upon the edge. thereof, and as he placed his body upon the edge thereof came in contact with the wire aforesaid, and thereupon received a shock of such force and effect as to kill him. There is a prayer for damages in the sum of $10,000.

The appellees each contend that no question is presented on appeal with reference to the respective peremptory instructions, as no exception was taken 1. to the giving thereof. It appears, however, by the record that the bill of exceptions containing such instructions, duly signed by the trial judge, was presented and filed within the time given for filing bills of exceptions. Without deciding whether such bill was included in the praecipe of the appellant on account of not being filed until after the praecipe was filed, we hold that there was a good-faith effort to comply with the rules of the court. Ignoring any technicalities, the case will be decided upon its merits.

In this case, if the evidence upon any issue was insufficient in law to sustain a verdict in favor of the appellant, it was not only proper, but it was the 2. duty of the court to direct a verdict upon such issue against him. *Beaning* v. *South Bend Electric Co.* (1910), 45 Ind. App. 261, 90 N. E. 786; *Westfall* v. *Wait* (1905), 165 Ind. 353, 73 N. E. 1089, 6 Ann. Cas. 788; *Borg* v. *Larson* (1916), 60 Ind. App.

514, 111 N. E. 201; *Williams* v. *Pittsburgh, etc., R. Co.* (1918), 68 Ind. App. 93, 120 N. E. 46. The case of *Beaning* v. *South Bend Electric Co., supra,* holds that, if there is any evidence to sustain the verdict, no matter what its weight or character, nor how much it may apparently be overborne by more convincing evidence conflicting therewith, the decision of the issue must be submitted to the jury, citing *Pennsylvania Co.* v. *McCormack* (1892), 131 Ind. 250, 30 N. E. 27; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25, 62 N. E. 1028. It is undisputed in the evidence that appellee Light and Heat Company installed the motor upon the houseboat of appellee Alley, and connected its electric wires therewith through which it was furnishing current to appellee Alley. It does not appear by the evidence, however, that the electric appliances, wires, etc., other than the motor, that were upon the houseboat were installed by said appellee Light and Heat Company. It does not appear by the evidence that the said appellee Light and Heat Company placed a wire around the edge of the boat, the contact with which resulted in the death of the appellant's decedent, and it appears by the undisputed evidence that said appellee had no knowledge whatever of the existence of such wire. It is not alleged in the complaint that said appellee Light and Heat Company placed such wire around the edge of the boat, but, on the contrary, it is averred that the said Alley placed, or caused to be placed, on and around the outer edge of the boat the wire which produced the injury and death of appellant's decedent, and that it could not be seen by a person in the water near the boat, and that it was wrongfully and unlawfully placed for the sole purpose of having it charged with

electricity in such a manner that when any person should touch the wire such person would receive an electric shock from the current conveyed by such wire, and that it was done by said Alley with malice aforethought, and with the intention to injure and maim any person who might come in contact with it. There is no averment in the complaint and no evidence as to how long such wires had been around the edge of the boat and used to carry an electric current. As far as appears by averment or proof, it may have been so placed immediately before the accident.

3. It has been repeatedly held that where the furnisher of electricity supplies the same to the customer, first through its own wires, and then through the wires owned and maintained by such customer, and over which the furnisher had no supervision or control, and an injury results by reason of the negligent manner in which the customer's wires are equipped and maintained, the party who merely sells the current is not liable. *Princeton Light, etc., Co.* v. *Ballard* (1915), 59 Ind. App. 345, 109 N. E. 405; *Minneapolis General Elec. Co.* v. *Cronon* (1908), 166 Fed. 651, 92 C. C. A. 345, 20 L. R. A. (N. S.) 816. The appellant contends that one installing an electric plant and supplying the current is charged with the duty of inspecting and discovering defects, and under this proposition states that appellee Light and Heat Company furnished all the wire and material used in the boat, and installed it, but never inspected it. This statement is not borne out by the evidence. Authorities cited are *Thomas* v. *Maysville Gas Co.* (1900), 108 Ky. 224, 56 S. W. 153, 53 L. R. A. 145; *Lewis'·Admr.* v. *Bowling Green Gaslight Co.* (1909), 135 Ky. 611, 117 S. W. 278, 22 L. R. A. (N. S.) 1169;

*Mitchell* v. *Raleigh Electric Co.* (1901), 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. 735; *Abrams* v. *Seattle* (1910), 60 Wash. 356, 111 Pac. 168, 140 Am. St. 916. In the first three of these cases the defendant was furnishing its current to wires that were stretched over a street or highway, and in the last the defect was not in the wiring in the house, but outside, and resulted from uninsulated wires striking together as the wind swung them. If these elements do not distinguish them, then they are certainly against the great weight of authority, and certainly do not state the law of Indiana, as decided in *Princeton Light, etc., Co.* v. *Ballard, supra.* There was no error in directing the verdict as to appellee Indianapolis Light and Heat Company.

The appellant contends that appellee city of Indianapolis, by §§8961, 8729 Burns 1914, Acts 1905 p. 219, Acts 1909 p. 238, had full power and control over Fall creek, and that appellee Light and Heat Company had no right upon the waters or boats upon such waters of said stream other than as granted or permitted by statute or the ordinance of the city. This argument applies, of course, with equal force to defendant Alley. It is apparent from reading the sections mentioned that they are public improvement sections, and can have no application to the facts in this case. The kind of supervision that appellant contends should have been exercised in this case is by virtue of §8964 Burns 1914, Acts 1905 p. 383, which makes no mention of watercourses, and gives no authority over them, except, impliedly, when they are in public places. Defendant Alley occupied this stream by a lease from the owner, Horace McKay, and later by his heirs, of twenty-three acres of land covering both

sides of the stream where the barge was located. Appellant says that the city in its control of the stream had established a bathing and swimming place at the point wherein the boat was suffered and permitted to float at its mooring, but there is no evidence of such an action on the part of the city. By the averments of the complaint, the injury was the result of the wilful and malicious act of defendant Alley in placing the wire around the boat, and connecting it with the current, but of this misconduct appellee city had no notice whatever, and, it not being shown how long the wire had been so placed as aforesaid, it cannot be charged with constructive notice. Even if at the time of the injury it had jurisdiction of the stream for any purpose, it cannot be charged with an injury that resulted from a dangerous wire, the existence of which it had no notice. *City of Evansville* v. *Senhenn* (1898), 151 Ind. 42, 47 N. E. 634, 51 N. E. 88, 41 L. R. A. 728, 68 Am. St. 218. There was no error in directing the verdict as to appellee city of Indianapolis.

Appellant complains that the court erred in refusing to require witness Lewis B. Mitchell to answer questions propounded to him, such witness having refused to answer for the reason that his disclosures might tend to incriminate him. At said time the witness was under joint indictment with defendant Alley, for the offense that resulted in the injury involved in this action. Appellant failed to make any statement of what he expected to prove by said witness, and we are therefore unable to say that such ruling of the court was harmful to appellant, even if erroneous. *Jordan* v. *D'Heur* (1880), 71 Ind.

199; *Hitz* v. *Warner* (1911), 47 Ind. App. 612, 93 N. E. 1005. We find no available error. The judgment is affirmed.