Aurentz v. Nierman, Admr.—76 Ind. App. 669.

---

AURENTZ ET AL. *v.* NIERMAN, ADMINISTRATOR.

[No. 10,881. Filed June 30, 1921. Rehearing denied November 18, 1921.]

1. EVIDENCE.—*Electricity.—Dangerous Character.*—The use of electricity has become so common, and the danger from its use is so well known, that it has become a matter of common knowledge that a current of 220 volts or more is dangerous. p. 674.

2. ELECTRICITY.—*Defective Wiring.—Personal Injuries.—Liability.*—The owner of a building, in exclusive possession, who knew that the electric wiring therein was so defective as to cause a "ground," which might be dangerous under certain conditions to those coming upon the premises, but who made no effort to locate and repair the defect, cannot escape liability for injuries resulting from such defect on the ground that he was not an expert and that he relied upon information that he received from others as to the "ground" being dangerous. p. 674.

3. ELECTRICITY.—*Transmission of Electric Current.—Personal Injuries.—Liability.*—A corporation which continued to supply a current of electricity for fixtures in a building after it had acquired knowledge, by inspection made upon complaint of the owner of the premises, that due to defective wiring and fixtures, a "ground" existed which under certain conditions might be-

come highly dangerous, is liable for the death of a person coming in contact with such fixtures, though it had no control over the building or right to make repairs. (Princeton Light, etc., Co. v. Ballard [1915], 59 Ind. App. 345, and Caldwell v. Alley [1919], 70 Ind. App. 313, distinguished.)    p. 676.

4.    TRIAL.—*Instructions.—Applicability.—Personal Injuries.—Instruction to Disregard Argument on Compensation Law.*—In an action for the death of plaintiff's decedent against the owner of a building in which decedent was killed by coming in contact with a defective electric fixture and against the city supplying the electric current, neither of which was the employer of intestate, it was proper for the trial court to instruct the jury to give no consideration to argument by counsel with reference to the Workmen's Compensation Act, since that law was not involved in the action.   p. 677.

From Allen Superior Court; *William N. Ballou,* Judge.

Action by August C. Nierman, administrator of the estate of Lloyd Norton, deceased, against Augustus C. Aurentz and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Leonard, Rose & Zollars, Walter Old, Albert E. Thomas* and *Creighton H. Williams,* for appellants.

*Ryan, Ryan & Aldrich,* for appellee.

NICHOLS, P. J.—Action by appellee for damages for the death of Lloyd Norton alleged to have been caused by the negligence of appellant Aurentz in maintaining in a defective condition electric wires in his business house in the city of Ft. Wayne, and in supplying electricity for the lighting thereof, by appellant city of Ft. Wayne by reason of which concurrent negligence said Norton was electrocuted.

By their respective motions for a new trial appellants present errors relied upon for reversal which are considered.

Appellants in their defense emphasize the fact that the contract for the original electric wiring of appellant Aurentz's building, which was used for a confectionery store, in the city of Ft. Wayne, was let by appel-

lant Aurentz to one Pauley, who was and had been in the business of wiring buildings for light, power and other purposes for fifteen or twenty years, and that he was generally considered one of the most competent and best in the business. It is to be observed, however, that the complaint does not proceed upon the theory that the original installation of the system of wiring was defective, but that the same had been installed for a number of years and had become defective and dangerous, and that both appellants had knowledge of the dangerous and defective condition, and that notwithstanding such knowledge they did nothing to correct the defect and to render the premises safe until after the accident here involved. The transformer from which the current was taken was located on a pole near the building and was used also for the purpose of reducing the current furnished to a large number of other buildings covering a block or more in the heart of the city. The city brought the current into appellant Aurentz's building by three wires running from the transformer, the two outer wires, the positive ones, carrying about 220 volts, and the middle wire, the negative one, carrying 110 volts. The wires were carried from the fuse boxes through a conduit to a switch installed on the north side of a partition, and near the door entering the front room, which switch was used in manipulating the lights in the front room. About two inches below it was an outlet or socket for the purpose of operating the machines used by appellant Aurentz in his business, and below this and to the right was a switch by which the current was turned on and off this socket. All wires were intended to be insulated with rubber and the conduit was connected with the water pipe so that in case of trouble, or that they became charged, the current would be carried to the ground through the water pipe which was the usual and ordinary way of

installing such work. The ice in the ice box located near caused it to sweat more or less and the floor became and was constantly damp and sometimes wet. On various occasions the fuses blew out, and thereupon appellant Aurentz notified the city lighting authorities, and they sent their trouble men and experts to his place of business to determine the trouble, and to restore the fuses. Upon investigation it was found that there was a ground some place in one of appellant Aurentz's lines but the exact place of the ground was not determined. It appears that the particular circuit leading to the socket here involved had been grounded for a number of years causing the lights in the place of business which were connected therewith to go out. A number of employes of the city, known as trouble men, one of whom was the assistant superintendent, had visited the building from time to time covering a period of five or six years prior to the accident, making their visits in response to calls by appellant Aurentz, but no examination was ever made by either appellant to locate the ground or remedy the defect until after the death of Norton. It was not the business of the employes of the city to remedy the defect but by inspection they discovered it and with knowledge thereof they notified appellant Aurentz, some of them, however, saying that it was not dangerous. But one of them at least informed him that things were rotten, and yet, not being an expert, he failed to call anyone to make an expert examination of his system of wiring, and to correct the defect. Such an examination was made after the accident which showed that the floor was grounded, and that there was a voltage according to one expert of 279 volts, while another test showed 230. While it appears that the city exercised no right of supervision over the wires in the building, it clearly appears that they had full knowledge of the defect, and that appellant Aurentz notified them

from time to time of his fuses being out, and that they sent their trouble men to the store room. With full knowledge of the "rotten" condition of the wiring system in the building, they continued to feed their current into the same.

The deceased was employed by the Ft. Wayne Dairy Company, and on the morning of the accident, he and another employe of the dairy company arrived early, before it was yet light, at the rear of appellant Aurentz's place of business delivering their ice cream, and entered the building. It was a little difficult to see by reason of the darkness, and the deceased walked to the east door of the partition and switched on the lights manipulated by the switch located there. This apparently did not give enough light to satisfy him, and he walked to the west door with the intention of switching on the lights on that side of the room, and reached with his arm through the door and around feeling for the switch when he received the shock of electricity which resulted in his death. Investigation showed that there was a short circuit some place in the conduit leading from the breaker box to the switch. Appellants contend that the evidence shows that this ground within itself did not render the use of the line dangerous, but the evidence also shows that with another ground it was dangerous, and therefore the ground in the conduit became an element contributing to the death of appellee's decedent. Appellants say that so far as could be determined, or as suppositions are, another ground had occurred somewhere in the vicinity in some of the buildings or lines served by this transformer, while the ground was in the conduit, forming a short circuit and causing the accident. The jury has found by its general verdict that this ground was in the conduit at the time of the accident because of the negligence of appellant Aurentz in

failing to have the wires repaired, and that appellant city, with knowledge of such ground at the time of the accident was supplying current to the wires, and by reason of such ground and the presence of the current, the accident occurred, and under such circumstances we do not see how either of appellants can escape liability.

The use of the electricity has become so common, and the danger from the use of it is so well known, that it has become a matter of common, as well as expert knowledge, that a voltage such as here used in this building is dangerous. By §3862a Burns 1914, Acts 1911 p. 597, it has been made the duty, *inter alia,* of all owners or other persons in the care of any buildings, in the transmission and use of electricity of a dangerous voltage to see that there is proper testing and inspection, full and complete insulation of the wires provided at all points for the protection of the public or employes of the owner, or those liable to come in contact therewith.

It is the undisputed evidence in this case that with full knowledge that appellant's wires which were carrying a dangerous voltage were grounded and that they continued to be so grounded for a number of years, there was no inspection thereof for the purpose of repairing the defect. From the evidence the jury had a right to infer that the wires and the brass parts to which the wires were attached on the socket above mentioned were unguarded and uninsulated and that both appellants had knowledge of such condition.

In the case of *Ayrshire Coal Co.* v. *Wilder* (1920), 75 Ind. App. 137, 129 N. E. 260, the court quotes with approval from *Winegarner* v. *Edison Light, etc., Co.* (1910), 83 Kan. 67, 109 Pac. 778, 28 L. R. A. (N. S.) 677, as follows: "Wires charged with an electric current may be harmless, or they may be in the highest

degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in a particular case. The company, however, which uses such dangerous agent, is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity of its wires and liable to come accidentally or otherwise in contact with them." The court approves the quotation as to the dangerous agency, but says the statement as to degree of care is not in harmony with the Indiana decisions. After further quotations from other authorities the court then says: "There can be no doubt but that to maintain an uninsulated wire charged with dangerous current of electricity in a place where an employe in the discharge of his duty may come in contact with it, without more constitutes negligence." See also, *Sheffield* v. *Morton* (1909), 161 Ala. 153, 49 South. 772; *Southwestern, etc., Co.* v. *Bruce* (1909), 89 Ark. 581, 117 S. W. 564. If the wires in this building had been properly insulated, and if the fixtures had been properly protected and insulated, it is evident that the accident would not have occurred. Appellant Aurentz was in the exclusive possession of the store and had full control of the system of wiring and under the circumstances of this case, he cannot protect himself against liability by saying that he was not an expert and that he relied upon information that he received from others. It clearly appears by the evidence that he was informed that his wires were grounded, and that they had been for a long period of time. As we view the case, a clear case of negligence was made out against him.

Appellant city cites the case of *Caldwell* v. *Alley* (1919), 70 Ind. App. 313, 123 N. E. 432, decided by

this court for the purpose of establishing its non-
3.   liability, but the case does not help it for it there
clearly appears that the company supplying the
electric current had no knowledge of the existence of
the charged wire that caused the death there involved,
and it does not appear that they were ever called to
inspect, while in this case it appears that appellant city
was repeatedly notified of the defective condition and
was called to the building and that it sent its experts
who discovered a ground and they knew, or should have
known, that under certain conditions such ground would
become highly dangerous, and that it might produce
fatal results to any persons coming in contact with the
wires so grounded.   This affirmative element of knowl-
edge also distinguishes this case from *Princeton Light,
etc., Co.* v. *Ballard* (1915),  59 Ind. App. 345, 109 N. E.
405, 20 L. R. A. (N. S.) 816, and cases there cited on
p. 347; I Joyce, Electricity (2d. ed.) §445c, there cited
states the rule as follows: "Where the wiring of a build-
ing is not done, or the fixtures not installed, by the com-
pany furnishing the electricity and an injury ensues
solely as a result of some defect in the wiring or fix-
tures of which the company had no knowledge, and it is
under no contract obligation to keep such wiring or
fixtures in proper repair, its only obligation being to
supply electric current, it is not liable for such injury."
The author then illustrates as follows: "Where a guest
at a hotel was injured by the falling of an electric light
upon him, which burned his back, it was held that as it
was not shown that the wiring was done by the electric
light company or that it had any knowledge of defects
therein, such company could not be held liable for the
injury caused by the falling of the wire."   By furnish-
ing the current under such circumstances it must be
held that appellant city negligently contributed to the
fatal result.

Appellants complain of an instruction given by the court to the effect that the jury should give no consideration to certain arguments made by counsel with reference to the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918). This instruction was correct. The Workmen's Compensation Act, *supra,* was not involved in this action. There could have been no recovery thereunder, for the deceased was not an employe of either appellants. Complaint is made of certain other instructions given by the court, and of the court's action in refusing instructions tendered. A careful examination of the instructions given as a whole and of those refused discloses no reversible error. The judgment is affirmed.