590 N.E.2d 1067 (1992)
NORTHERN INDIANA PUBLIC SERVICE COMPANY, Carol G. Kelley, Patricia L. Kelley, Terry D. Kruger, Judy S. Kruger, City of East Chicago, Appellants,
v.
EAST CHICAGO SANITARY DISTRICT, Bittner & Detella, Inc., Tenech Engineering, Inc., Appellees, Carol G. Kelley, Patricia Kelley, Terry Kruger, Judy Kruger, City of East Chicago, Northern Indiana Public Service Company, Cross-Appellees.
No. 56A03-9009-CV-418.
Court of Appeals of Indiana, Third District.
January 29, 1992.
Ordered Published April 16, 1992.
*1070 Paul A. Rake, Sherry L. Clarke, Linda J. Kibler, Eichhorn, Eichhorn & Link, Hammond, for appellant and cross-appellee, Northern Indiana Public Service Co.
George Gessler, Gessler, Flynn, Fleishman, Hughes & Socol, Ltd., Chicago, Ill., for appellants and cross-appellees, Carrol G. Kelley and Patricia L. Kelley.
John R. Pera, Greco, Pera & Bishop, Merrillville, for appellants and cross-appellees, Terry D. Kruger and Judy S. Kruger.
John Barce, Barce, Ryan & Howard, Kentland, for appellants and cross-appellees, Carrol G. Kelley, Patricia L. Kelley, Terry D. Kruger and Judy S. Kruger.
Joseph Stalmack, Galvin, Stalmack & Kirschner, Hammond, for appellees, East Chicago Sanitary Dist. and Tenech Engineering, Inc., and for appellant and cross-appellee, City of East Chicago.
Terrance Smith, Smith & Debonis, East Chicago, for appellant and cross-appellee, City of East Chicago.
Gary J. Dankert, Kenneth T. Ungar, Ice Miller Donadio & Ryan, Indianapolis, for appellee, Bittner and Detella, Inc.
Robert Hawk, Spangler, Jennings & Dougherty, Merrillville, for appellee, Bittner and Detella, Inc.
GARRARD, Judge.
Carrol G. Kelley and Terry D. Kruger were seriously injured while they were working on a waste water treatment plant renovation project at the East Chicago Sanitary District in East Chicago, Indiana. They were carpenters employed by the Lombard Company (general contractor) of Alsip, Illinois. Their injuries occurred on September 15, 1987, when they were attempting to move large concrete forms. The task required the use of a crane. When they moved the first form the boom of the crane either contacted or came within close proximity to an overhead power line. This particular line was uninsulated and carried 34,500 volts. An electrical charge traveled down the crane cable and into the spreader cable each was holding.
On September 11, 1989 Carrol G. Kelley and Patricia L. Kelley (Kelley) and Terry D. Kruger and Judy S. Kruger (Kruger) filed a complaint against East Chicago Sanitary District (ECSD), City of East Chicago (City), Bittner & Detella, Inc. (Architect), Tenech Engineering, Inc. (Engineer), and Northern Indiana Public Service Company (NIPSCO). The complaint alleged that City, ECSD, Architect, and Engineer breached the duty, owed by them to Kelley and Kruger, to exercise reasonable care in the management and control of the construction project and asserted that each had a nondelegable duty to comply with all federal and state laws and regulations that were applicable to the construction project. NIPSCO was alleged to have breached the duty it owed to Kelley and Kruger to exercise reasonable care in the management and use of its uninsulated high tension power lines.
*1071 Substantial discovery was conducted by the parties. Each defendant moved for summary judgment. Affidavits, documentary evidence, and briefs of counsel were attached to the motions. Kelley and Kruger, by counsel, filed a motion in opposition. Additionally, more than twenty depositions were properly before the court. The trial court ruled on the motions on September 6, 1990 as follows:
1. As to ECSD and City, the court found that for the `purpose of this litigation both of said Defendants are the same entity' namely City. ECSD was removed as a named party and summary judgment was granted as to them. As to City, the trial court found that there existed `genuine issues of material fact' relative to their duties which precluded the granting of summary judgment as to them.
2. As to Architect, the trial court found `that as a matter of law said Defendant had no contractual obligation relative to safety responsibilities and further as a matter of law, considering the evidence most favorable to the non-moving parties, said Defendant by its conduct assumed no responsibilities relative to safety herein and therefore said Defendant is entitled to Summary Judgment.'
3. As to Engineer, the trial court, likewise, found that `said Defendant had no contractual obligation for safety responsibilities and further as a matter of law, given the evidence most favorable to the non-moving party, said Defendant did not assume safety responsibilities herein and therefore is entitled to Summary Judgment.'
4. As to NIPSCO, the trial court found that there were `genuine issues of material fact relative to their duties and that their motion for Summary Judgment should be denied.'
Record at 489-90.
The case is before this court upon the proper interlocutory appeal of Kelley and Kruger, NIPSCO and City. Further proceedings were stayed pending the determination of this certified appeal.

Standard of Appellate Review
To test the law of the case, summary judgment proceedings offer the means for determining if there exist genuine issues of material fact that require trial. The procedure is to be applied with caution in view of a party's rights to have his issues fairly determined. Brown v. Northern Indiana Public Service Co. (1986), Ind. App., 496 N.E.2d 794, 796. They do not have as their purpose the trial of real and genuine factual issues. See Harvey, 3 Indiana Practice, 2d ed., Civil Code Study Commission Comments, p. 609 (1988). Although applied in almost all types of cases, summary judgment proceedings are generally inappropriate in negligence cases. Rediehs Express, Inc. v. Maple (1986), Ind. App., 491 N.E.2d 1006, 1008, cert. denied 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 762. If the facts of the case are not in dispute, however, summary judgment is certainly appropriate to test the law of a negligence action.
"The grant or denial of summary judgment is reviewed on appeal by the same standard as used by the trial court." (citations omitted). Ogden Estate v. Decatur County Hosp. (1987), Ind. App., 509 N.E.2d 901, 902. Summary judgment proceedings can be viewed as involving two levels of inquiry. See Brandon v. State (1976), 264 Ind. 177, 340 N.E.2d 756, 758-61; English Coal Co., Inc. v. Durcholz (1981), Ind. App., 422 N.E.2d 302, 307; Doe v. Barnett (1969), 145 Ind. App. 542, 251 N.E.2d 688, 694-95.[1] Initially, the trial court must determine if any genuine issues as to the material facts of the case exist. The moving party bears the burden of establishing that no genuine issues of material fact exist. See Ogden Estate, supra, 509 N.E.2d at 902. All facts asserted by the non-moving party are accepted as true and any doubts are to be resolved in the non-movant's favor. Id. This process necessarily involves an appreciation of the legal *1072 issues of the case, the characteristic facts that are generally material to those issues and the identification of the material facts contained within the instruments and testimony before the court. The trial court can then determine if there exists genuine disputes about material facts. If genuine factual issues exist, the motion is properly denied. Brandon, supra, 340 N.E.2d at 758-61.
A fact is material if its resolution is decisive of either the action or a relevant secondary issue. (citation omitted). The factual issue is genuine if it can not be foreclosed by reference to undisputed facts. That is, a factual issue is genuine if those matters properly considered under TR 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' differing versions. (citation omitted).
Jones v. City of Logansport (1982), Ind. App., 436 N.E.2d 1138, 1143. If no genuine issue of material fact exists, the trial court must then decide if the moving party is entitled to relief as a matter of law. Ogden Estate, supra, 509 N.E.2d at 902.

Actionable Negligence
The elements of actionable negligence that Kelley and Kruger are required to prove in their case are: (1) the existence of a duty imposed upon the defendants for their benefit; (2) that the defendant(s) breached that duty, and (3) that their injuries were proximately caused by the defendants' breach. Brown, supra, 496 N.E.2d at 796.

The Parties and Their Claims

I. NIPSCO
The trial court denied NIPSCO's motion for summary judgment, finding genuine issues of material fact relative to its duties.

A. NIPSCO's Duty.
The existence of a duty running from NIPSCO to Kelley and Kruger is a question of law to be determined by the trial court. Brown, 496 N.E.2d at 796. The trial court was to determine if a relationship existed between the parties that gave rise to a duty on the part of NIPSCO toward the plaintiffs. It must be remembered that "a factual question may be interwoven with the determination of the existence of a relationship, thus making the ultimate existence of a duty a mixed question of law and fact." Id. at 797. Duty might exist then if a certain set of facts is found. Id.
The Brown case addressed the law governing electric utilities. The Brown court recognized the well-settled rule that:
[I]n Indiana, companies engaged in the generation and distribution of electricity have a duty to exercise reasonable care to keep distribution and transmission lines safely insulated in places where the general public may come into contact with them. (citation omitted).
[An] electric utility will not generally be required to insulate its wires with a covering or coating to protect only those persons who might come into contact with power lines in the course of their employment as electric utility employees, or while cleaning and repairing a sign near power lines, or while installing a TV antenna on private property. (citations omitted)
Brown, supra, 496 N.E.2d at 797. See also Southern Ind. Gas & Elec. Co. v. Steinmetz (1977), 177 Ind. App. 96, 377 N.E.2d 1381.
Kelley and Kruger urge that they ought to be given the benefit of an exception recognized in Brown. The exception applies:
... when the utility knows or has knowledge of such facts which it should know that a particular segment of the population will be regularly exposed to uninsulated lines for one reason or another, particularly when children are involved. (citations omitted).
Brown, supra, 496 N.E.2d at 797.
We note, however, that the common factor that binds the above cases and their rules on utility company liability is that the utility owned the power lines involved. It is ownership of the lines that creates the relationship upon which any *1073 liability is based. NIPSCO's motion for summary judgment was based upon its assertion that it did not own the lines. In the absence of ownership and control of the power lines, NIPSCO claims it owed no duty to ensure the safety of Kelley and Kruger.
NIPSCO, as the moving party, had the burden of establishing that there was no genuine issue as to the material fact of line ownership. It contended the ECSD owned the power lines. NIPSCO met its initial burden by placing before the trial court, by way of affidavits, depositions, and exhibits, the following:
1. The power line was downstream from NIPSCO's metering devices.
2. The power line was wholly contained within the fenced areas of ECSD's property supplying the treatment plant.
3. All circuit drawings of the treatment plant showed that the line in issue was customer owned.
4. ECSD had on prior occasions contracted with independent electrical contractors to work on the line, i.e., move it in anticipation of the construction.
5. NIPSCO purchased one of the poles the line in issue was suspended from in order to change ECSD's metering.
The electricity had passed through the meter and was therefore owned by ECSD, the customer. The line was supported by poles owned by ECSD and located wholly within land that was fenced in and owned by ECSD. ECSD had exercised control over the line when it had the line moved in anticipation of construction.
Kelley and Kruger, as non-movants, needed to respond by "set[ting] forth specific facts showing that there is a genuine issue for trial." Trial Rule 56(E). They "may not rest upon the mere allegations ... of [their] pleadings." Id. Instead they responded by merely alleging that NIPSCO's facts were not good enough to demonstrate non-ownership. In fact, they state in their brief that ownership of the line is irrelevant. NIPSCO set forth in affidavits, made on personal knowledge, facts that would be admissible in evidence. Kelley and Kruger were then required to respond in like kind. They failed to respond in any fashion, i.e., by way of affidavit or similar instrument, that set out facts that opposed those of NIPSCO's. Nor did their pleadings set out facts in opposition to NIPSCO's. This was necessary in order to establish a genuine issue on the material fact of ownership of the power line.
It has been repeatedly held that where the furnisher of electricity supplies the same to the customer, first through its own wires, and then through the wires owned and maintained by such customer, and over which the furnisher had no supervision or control, and an injury results by reason of the negligent manner in which the customer's wires are equipped and maintained, the party who merely sells the current is not liable. (citations omitted).
Caldwell v. Alley et al. (1919), 70 Ind. App. 313, 321, 123 N.E. 432, 434.
Absent a showing of NIPSCO's ownership of the power line, is there another basis upon which NIPSCO owed a duty to Kelley and Kruger? The case of Aurentz v. Nierman (1921), 76 Ind. App. 669, 131 N.E. 832, involved a death by electrocution. In that case the electrical utility that supplied the electricity shared liability for the death of the property owner's employee, who contacted the faulty wiring, in spite of the lack of control over the building or right to repair the defects. Liability was based upon the electric utility's actual knowledge of the imminent danger caused by defects in the wiring. Aurentz, supra, 76 Ind. App. at 676, 131 N.E. at 834. If NIPSCO is without actual knowledge of the circumstances that created an imminent danger to Kelley and Kruger on the morning their injuries occurred and its sole obligation was to supply electricity, it is not liable for the plaintiffs' injuries. 65 C.J.S. Negligence § 15 (1966), has been quoted with approval as follows:
A person has no duty to anticipate negligence on the part of others, and in the absence of knowledge or notice to the contrary, is entitled to assume, and to act *1074 on the assumption, that others will exercise ordinary care.
Pilkington v. Hendricks County Rural Elec. (1984), Ind. App., 460 N.E.2d 1000, 1004. To address the issue of duty under this approach Kelley and Kruger were required to bring forth facts that demonstrated or permitted an allowable inference that NIPSCO had actual knowledge or notice of the circumstances that created an imminent danger to Kelley and Kruger on the morning of September 15, 1987. The record does not demonstrate the existence of any such facts.[2] This approach is, therefore, unavailing to Kelley and Kruger.
Kelley and Kruger urge us to affirm the trial court's denial of NIPSCO's motion for summary judgment on the basis that NIPSCO assumed a duty of construction worker safety near the power line. We find from our review of the record that this contention is unsupported.
Our courts have recognized that:
[A] duty may be imposed upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully. (citations omitted).
Lather v. Berg (1988), Ind. App., 519 N.E.2d 755, 766. The mere performance of coordinate or duplicative functions will not suffice. Before being found to assume a duty of construction worker safety, NIPSCO must have actually undertaken to perform for the others this legal duty itself. Id. To prevail, Kelley and Kruger must have presented evidence that NIPSCO actively undertook the general contractor's duty to provide a safe work place. That evidence must show that the general contractor relinquished control over this aspect of the construction in favor of NIPSCO. Id. There was no fact or reasonable inference arising from the evidence that NIPSCO gratuitously assumed a duty to provide a safe workplace for Kelley and Kruger. Denial of summary judgment cannot be sustained upon the theory that NIPSCO voluntarily assumed any duty for worker safety.
In view of the foregoing, the court erred in denying NIPSCO's motion for summary judgment.

II. City
The trial court found that there existed genuine issues of material fact relative to City's duties which precluded the granting of summary judgment to them. Kelley and Kruger, as well as City, cite the case of Douglass v. Irvin (1990), Ind., 549 N.E.2d 368. In Douglass, Justice Dickson's opinion made it clear that there is no independent "equal or superior knowledge" rule as a "prerequisite element of or limitation upon the existence of a landowner's duty of care." Douglass, supra, 549 N.E.2d at 371. City, as the land owner had:
... a common law duty to exercise due care to keep [its] property in a reasonably safe condition for business invitees, including employees of independent contractors. However, [City] ha[d] no duty to furnish the employees of an independent contractor a safe place to work in the broad sense that the phrase is applied to an employer. [City] in such case merely ha[d] an affirmative duty to exercise ordinary care to keep [its] property in a reasonably safe condition coextensive with the purpose and intent of the implied invitation. (citations omitted).
Howard v. H.J. Ricks Const. Co., Inc. (1987), Ind. App., 509 N.E.2d 201, 205.
Kelley and Kruger allege that as property owners City breached its duty by failing to insulate the power line. They *1075 cite the case of Brown v. NIPSCO (1986), Ind. App., 496 N.E.2d 794, supra, as authority. The Brown court reversed a trial court's grant of summary judgment to the defendant utility. Kelley and Kruger insist that they, like the plaintiff in Brown, ought not suffer summary judgment because:
The question remains, nevertheless, whether [they] fit within the exception articulated in Southern Ind. Gas & Elec. Co. v. Steinmetz as member[s] of a particular segment of the population, i.e. [general contractor] employees, which [City] knew or should have known would be regularly exposed to the high voltage wires. If that question is answered affirmatively then it must be determined whether [City] met the standard of care required by the relationship. (citations omitted).[3]
Brown, supra, 496 N.E.2d at 797. We cannot as a matter of law rule that City had no knowledge of facts indicating that Kelley and Kruger, as general contractor employees, would be exposed to the uninsulated lines. We conclude that there exist genuine issues of material facts regarding City's ownership and control of the property and power line whether it knew or should have known that the height and location of the uninsulated power line posed a danger to which general contractor employees would be regularly exposed, and if so whether City exercised reasonable prudence as would ordinarily be used under the conditions and circumstances. Summary judgment was, therefore, properly denied on these issues. See Brown, supra, 496 N.E.2d at 796.

Contributory Negligence
City argues that the trial court erred in not granting summary judgment on the ground that Kelley and Kruger were contributorily negligent as a matter of law. If Kelley and Kruger failed to exercise for their own safety that degree of care and caution which ordinary, reasonable and prudent persons in similar circumstances would have exercised, they would have been contributorily negligent. As a defense to a negligence claim, contributory negligence is generally a question of fact. It can be a question of law if the court can say that no reasonable person would have acted as the plaintiff did under the circumstances. Brown, 496 N.E.2d at 798. The negligence on the part of Kelley and Kruger must be so "clear and palpable that no verdict could make it otherwise" before contributory negligence as a matter of law should be found. Meadowlark Farms v. Warken (1978), 176 Ind. App. 437, 446, 376 N.E.2d 122, 131-32.
City cites Brown, supra, and argues that because Kelley's and Kruger's knowledge of the dangers they faced in moving the concrete forms equalled or surpassed its own, they were contributorily negligent as a matter of law. We acknowledge the rule that a plaintiff's equal or superior knowledge of a hazard can make him contributorily negligent as a matter of law. At the same time we also acknowledge that this rule has been limited. See Frost v. Phenix (1989), Ind. App., 539 N.E.2d 45, 49, citing Dreibelbis v. Bennett (1974), 162 Ind. App. 414, 319 N.E.2d 634.[4] In cases such as the instant one where there is no identity of circumstances, i.e., that the hazard arose from the joint participation of the parties in the enterprise, the rule loses its flavor. See Frost, supra, 539 N.E.2d at 49. Because facts that support an inference that City was negligent may not support an inference that Kelley and Kruger were negligent, we decline to apply the rule to find Kelley and Kruger contributorily negligent as a matter of law. Id. Kelley's and Kruger's attempt to move the concrete forms was dangerous. That alone will not "as a matter of law legally result in the conclusion that such conduct or *1076 activity was negligent." Id. We decline to find Kelley and Kruger contributorily negligent as a matter of law. The question of Kelley's and Kruger's appreciation of the hazard to themselves and whether they acted in a prudent and reasonable manner under the circumstances is a question best left to the fact finder. Summary judgment was correctly denied to the City.

III. Engineer.
The trial court found that as a matter of law Engineer had no contractual obligation relative to safety responsibilities and further as a matter of law, considering the evidence most favorable to the non-moving parties, Engineer by its conduct assumed no responsibilities relative to safety herein and therefore was entitled to summary judgment.
Kelley and Kruger allege that Engineer was a prime contractor by statutory definition.[5] Therefore, they argue Engineer had statutory obligations relative to them.[6]
Kelley's and Kruger's argument rests upon the fact that ECSD, as the awarding unit, and Engineer contracted directly with each other. They contend that "[t]his contractual relationship led, by force of Indiana law, to the imposition of certain statutory duties upon [Engineer]." Appellant's Brief at 17. This approach fails because they fail to demonstrate that by this contractual relationship, Engineer was "responsible to the awarding unit for direct or indirect completion of all or part of the over-all project." See note 5, supra. Engineer's responsibility was to provide general engineering administration. This included making periodic visits to "review the progress and quality of the construction work,"[7] and conducting on-site observation of the work to "determine whether the PROJECT is proceeding in general conformance with the Contract Documents and that the completed work will conform to the requirements of the Contract Documents."[8] Nowhere in the contract is there any provision assigning Engineer responsibility for construction contractor employee safety. Kelley's and Kruger's argument fails to recognize the distinction between "the obligation to assure that the construction conforms to the authorized plans," and "the obligation to assume responsibility for the safety of persons lawfully on the construction site." Walters v. Kellam & Foley (1977), 172 Ind. App. 207, 360 N.E.2d 199, 207. We find that Engineer was not a prime contractor as it is defined by the statute and therefore no statutory duties relative to construction worker safety arose in Engineer.
Kelley and Kruger contend that in the alternative Engineer, by its conduct, assumed the duty to warn them of the dangerous conditions at the job site. The discussion above as to our finding that NIPSCO had not assumed any duty relative to construction worker safety applies with equal force to Engineer. Our review of the record discloses that as a matter of law Engineer's conduct did not rise to such a level as to impute to them a duty relative to the safety of Kelley and Kruger as construction workers. See Teitge v. Remy Const. Co., Inc. (1988), Ind. App., 526 N.E.2d 1008 (several instances of on-site instruction to construction contractor's employees concerning safety did not convert architect from coordinator to "baby-sitter").

*1077 IV. Architect.
The trial court found that as a matter of law Architect had no contractual obligation relative to safety responsibilities and further as a matter of law, considering the evidence most favorable to the non-moving parties, Architect by its own conduct assumed no responsibilities relative to safety herein and therefore Architect was entitled to summary judgment.
Kelley and Kruger argue that Architect's contract with Engineer created in it responsibilities for the on-site safety of construction workers. They contend that by operation of the contract whereby a derivative duty of care flowed from Engineer to Architect, Architect became bound by the same IAC provisions relating to Engineer. Having found Engineer not bound under the IAC provisions, we now decline to find Architect bound by those provisions. Our prior discussions about assumption of duty are equally applicable to Kelley's and Kruger's allegation that Architect assumed safety responsibilities relative to them. The record simply does not support such an allegation.
Kelley and Kruger cite the case of Perry v. NIPSCO (1982), Ind. App., 433 N.E.2d 44 as authority for finding both Engineer and Architect had assumed safety responsibilities. In Perry the defendant was found to have assumed the obligation to enforce safety measures at the job site. The facts in support of that finding included:
(1) the defendant had held regular safety meetings,
(2) the defendant had safety men at the site who had jurisdiction of the safety program,
(3) the defendant's employee whom the plaintiff had spoken to just prior to his fall and injury wore a hat with the words "Safety Supervisor" written on the front.
Perry, supra, 433 N.E.2d at 49. Nothing in the record establishes that Engineer's or Architect's conduct on the job site remotely resembled the conduct of the Perry defendant.
Our finding that Engineer or Architect had not assumed any safety obligations is unshaken by the fact that their representative, when confronted with four unsafe situations,[9] notified General Contractor at project meetings. We agree with Architect that to hold such actions amount to an assumption of a safety duty for the whole site for all workers of all trades and for all their activities would contradict our holding in Teitge. All persons on the construction site should be encouraged to report or act upon any observed hazards without the apprehension that if they do so, they will have assumed safety duties relative to the whole job site.

V. Kelley and Kruger.
Kelley and Kruger additionally argue that the court erred in refusing to consider the partial deposition of Ralph Armington at the summary judgment hearing. We disagree and additionally find that Kelley and Kruger have failed to demonstrate that they were prejudiced by the ruling.
The deposition, which was taken at the behest of Kelley and Kruger, was incomplete because the witness had needed to leave before any of the defendants had the opportunity for cross examination. At the hearing plaintiffs' counsel did not know the whereabouts of the original and could not recall whether signature had been reserved.
Depositions are, after all, hearsay statements. It is the fact that they are sworn statements coupled with the opportunity of opposing parties to engage in cross examination that makes them admissible as evidence. See Iseton v. State (1984) Ind. App., 472 N.E.2d 643, 648-649. Because of its deficiencies the tendered deposition of Mr. Armington was excludible pursuant to Trial Rule 32 and the court did not abuse its discretion in refusing to consider it.
*1078 Furthermore, even had the exclusion been error, Kelley and Kruger have failed to demonstrate that they were prejudiced. Beyond the bare assertion that the testimony "clearly presents additional material issues of fact" as to the responsibility of Architect and Engineer, their brief is silent as to the contents of the partial deposition. That is not sufficient compliance with the requirement of A.R. 8.3(A)(7) and the burden upon them to demonstrate prejudice from the court's ruling.
Their argument that exclusion of the partial deposition will encourage parties adverse to the proponent of a deposition to prematurely terminate the taking of depositions is wholly misplaced. The problem in the present case arose because time constraints upon the witness caused a termination before the defendants had the opportunity to examine him.

Conclusion
The denial of summary judgment on behalf of NIPSCO is reversed. The other rulings of the court are affirmed. The case is remanded for further proceedings consistent herewith.
Affirmed in part, reversed in part and remanded.
STATON and CONOVER, JJ., concur.
NOTES
[1] Professor Harvey describes these cases as "[p]erhaps the three leading cases explaining the basic formula for summary judgment in the last three decades... ." Harvey, 3 Indiana Practice, 2d ed., § 56.7 (1988).
[2] Kelley and Kruger argue that the depositions of NIPSCO employees show that they were aware of construction activity, and therefore NIPSCO had a duty to protect them from electrical injury. Mere knowledge of construction activity is not enough. They have not shown that any NIPSCO employee knew or was on notice of crane activity near the power line on September 15, 1987.
[3] That standard is such "care as a person of reasonable prudence would ordinarily use under like conditions and circumstances." Brown, 496 N.E.2d at 797.
[4] After reviewing early cases that had adopted the rule, the Frost court wrote, "[T]he respective knowledge that the parties possessed of the hazard sprang from their joint participation in the hazardous enterprise. There was an identity of circumstances bearing on the parties' lack of due care." 539 N.E.2d at 49.
[5] The term "prime contractor" shall be interpreted as being the person, firm, or corporation that is responsible to the awarding unit for direct or indirect completion of all or part of the overall project. 610 IAC 5-1-1(C)(8). This section has since been repealed by the Department of Labor. Filed January 15, 1988. 11 IR 1784.
[6] Power shall be cut off from electrical lines within range of shovel or crane operation whenever possible. When not possible to cut off power the shovel or crane shall not be operated within reach of electrical transmission lines. 610 IAC 5-1-12(21). Also repealed by Department of Labor. Filed January 15, 1988. 11 IR 1784.
[7] See § 1.1.8 of ECSD-Engineer contract of 16 May 1986. Record at 201.
[8] See § 1.2.6 of ECSD-Engineer contract dated 16 May 1986. Record at 202.
[9] Construction representatives acted upon (1) construction vehicles speeding on the site, (2) heavy equipment operating too close to excavations, (3) workers in an unsafe trench, and (4) removing old rebar, he had tripped on from the site.