## BEANING *v.* SOUTH BEND ELECTRIC COMPANY ET AL.

[No. 6,664. Filed February 2, 1910.]

1. PLEADING.— *Complaint.*— *Insufficiency.*— *Directing Verdict.*— *When Judgment Affirmed on Complaint.*—*Defects Cured by Verdict.*—Where a complaint is insufficient and the case is tried, a verdict being ordered for the defendant on the ground of the insufficiency of the evidence, the Appellate Court will not affirm the judgment on the insufficiency of the complaint, unless the

facts stated are not sufficient to bar another action for the same cause, otherwise the defects of the complaint will be deemed as cured by the verdict. pp. 266, 267.

2. NEGLIGENCE.— *Telegraphs and Telephones.*— *Complaint.*— *Barring Another Action.*—A complaint alleging that defendant telephone company negligently attached a cable to a cable seat, thereby grounding the cable seat and causing injury to a city employe who was ascending the telephone pole in order to make repairs, and that defendant electric light company negligently maintained an uninsulated high voltage wire so near such pole as to come in contact with one climbing such pole, thereby injuring such employe, is sufficient to bar another action for such injury. p. 266.

3. TRIAL.—*Directing Verdict.*—*Jury.*—Where there is any evidence, direct or inferential, tending to support the plaintiff's cause of action, a verdict for the defendant should not be directed. p. 267.

4. TRIAL.— *Directing Verdict.*— *Joint Defendants.*— *Negligence.*— In an action against two defendants for negligence, if there is evidence tending to support a judgment against one or both, a judgment on a directed verdict for both will be reversed. p. 268.

5. NEGLIGENCE.—*Trespassers.*—*Licensees.*—The owner of property is not liable to trespassers or bare licensees for mere negligence. p. 271.

6. TELEGRAPHS AND TELEPHONES.—*Electric Lights.*—*Use of Poles by Others.*—*Streets.*—Telegraph, telephone, electric light and other companies licensed to set poles along the streets of cities impliedly consent to the use of such poles by the employes of others for the purpose of properly maintaining their wires. p. 271.

7. TELEGRAPHS AND TELEPHONES.—*Electric Lights.*—*Poles.*—*Use of, by City.*—*Negligence.*—Where a city maintains a police telephone system using the poles of a telephone company, such company, as well as an electric light company, whose poles are set in the street under a license from the city, are liable for negligence to a city employe who climbs such poles to repair the city's wires, and receives injuries by coming in contact with their wires. p. 272.

8. TELEGRAPHS AND TELEPHONES.—*Electricity.*—*Negligence.*—*Complaint.*—*Proof.*—An allegation that the plaintiff, a city employe engaged in disentangling its police telephone wires from the company's wires, had an express invitation from defendant telephone company to climb its poles in the prosecution of his work, is supported by proof of an implied invitation. p. 276.

9. TELEGRAPHS AND TELEPHONES.— *Electric Light Companies.*— *Negligence.*— *Poles.*— *Contributory Negligence.*— Telephone and electric light companies are liable for negligence in the maintenance of their poles and wires; and it is no defense that the in-

jured employe might have escaped injury by doing his work in some other manner.  p. 277.

10.  NEGLIGENCE.—*Electric Light Companies.—Uninsulated Wires.*— An electric light company maintaining a defectively insulated wire so close to a telephone pole that it injured an employe rightfully climbing such pole, is liable therefor.  p. 277.

11.  NEGLIGENCE.—*Joint.—Complaint.—Proof.—Telephone and Electric Light Companies.*—A complaint alleging that defendants telephone and electric light companies by their alleged particular acts of negligence caused injuries to the plaintiff, will support a verdict against one or both of such companies.  p. 278.

12.  NEGLIGENCE.—*Telephone and Electric Light Companies.—Directing Verdict.—Evidence.*—Evidence tending to show that defendant electric light company maintained an uninsulated wire so near to a cable seat on a telephone pole that a city employe in climbing such pole was injured thereby, and that defendant telephone company maintained a cable attached to a cable seat by means of a wire, thereby causing such employe, when he came near such uninsulated wire to receive a shock therefrom, is sufficient to entitle the plaintiff to a submission of his case to the jury as against each defendant.  p. 279.

13.  NEGLIGENCE.—*Contributory.—Question for Jury.—Telephone and Electric Light Companies.*—Whether a city employe who in disentangling the police telephone wires from those of a telephone company climbed the company's pole and in so doing received a shock from an electric light wire maintained uninsulated near the telephone pole which supported a cable attached to a cable seat by means of a wire, was guilty of contributory negligence, is a question for the jury.  p. 280.

From Laporte Circuit Court; *John C. Richter*, Judge.

Action by Thomas H. Beaning against the South Bend Electric Company and another.  From a judgment for defendants, plaintiff appeals.  *Reversed.*

*Osborn, McVey & Osborn* and *J. F. Gallaher*, for appellant.

*A. G. Graham, Anderson, Parker & Crabill* and *Charles P. Drummond*, for appellees.

RABB, J.—Appellee South Bend Electric Company is a corporation engaged in the manufacture and sale of electricity for light and power purposes in the city of South Bend, and,

by license from the city authorities, its product is carried through the streets and alleys of the city, over wires strung on poles erected therein. Appellee South Bend Home Telephone Company is a corporation engaged in the transmission of messages, by means of electric telephones, in said city, and by a like license from the city is permitted to string wires upon poles erected by it along the streets and alleys of the city. The city of South Bend also maintains electric wires of its own, for the use of the public authorities of said city, one of which wires is used as a fire alarm, connecting all parts of the city by what is known as the "Gamewell Fire Alarm Telegraph System," with the city fire department; another is used by its police department, by means of which its officers in various parts of the city communicate with police headquarters. These city wires are at certain places in the city attached to poles belonging to appellee telephone company. One of the telephone company's poles, to which was attached a city police wire, was located at the intersection of Lindsey street and Portage avenue. This pole was about fifty feet high, and had five cross-arms on it, for the pupose of carrying the telephone wires. Underneath the cross-arms was a cable-box, and at a convenient distance below was a wire cable seat, maintained for the workmen, engaged at work on the cable-box, to sit upon while at work.

This cable seat was supported by arms extending out from the pole, and iron braces extending from the outer edge of the seat down about three feet below to the pole. This pole was provided with iron steps, consisting of spikes driven into the pole on either side, and extending out four or five inches from the face of the pole, and located at a convenient distance from each other, enabling a man to climb up the pole thereby. A cable containing a large number of wires was attached to the pole, coming to the pole from the southeast, and passing down the pole and beneath the cable seat, and up through the hole in the cable seat to the cable-box, from whence the wires were distributed to numerous pegs on

the arms of the telephone pole. This cable was connected with the cable seat by means of a small wire partly insulated. Within a distance of two feet from this pole, appellee electric company maintained a pole, about thirty feet in height, with two cross-arms, for the purpose of carrying electric light and power wires, and upon which there were at the time of the plaintiff's alleged accident, two wires, each carrying 2,200 volts of electricity. One of these wires was also attached to the telephone company's pole, by means of a bracket which held it a few inches from the body of the pole. This wire was attached in such close proximity to one of the braces supporting the cable seat, before mentioned, and to one of the steps on the pole, that the body of one engaged in climbing the pole was liable to come in contact with the wire and said iron brace or steps at the same time.

The appellant was engaged in the service of the city of South Bend, and the duties of his position required him to look after the city's wires, and keep them in good order for the transmission of messages over them. While he was thus engaged in the discharge of his duties to the city, he had occasion to climb the before-mentioned pole, belonging to the telephone company, to which was attached the city's police wire, and while doing so came in contact with the electric company's wire, at a time when he had hold of said brace to the cable seat, by reason of which a current of electricity was caused to pass through his body, severely burning his arms and hands, and the shock of which knocked him from the pole and caused serious injury.

Appellant brought this action against the appellees to recover damages for such injuries. His complaint proceeded upon the theory that each company was guilty of negligence proximately contributing thereto. It is charged against the telephone company that it was negligent in attaching the cable to the cable seat with a wire, and by such means grounding the cable seat, and endangering persons who, in the performance of their duties, might rightfully climb the

pole, and thereby come in contact with the cable seat and the nearby heavy voltage wire of appellee electric company; that appellee electric company was guilty of negligence in failing to keep its heavy voltage wire, attached to the telephone pole, properly insulated, and that these acts of negligence concurred in producing appellant's injury.

A demurrer of each appellee to the complaint was overruled, issues were formed, a jury trial had, and, after the evidence was heard, the court instructed the jury to return a verdict in favor of each appellee, and the giving of this instruction is the error relied upon for the reversal of the case.

It is insisted by appellee electric company that the judgment of the court below should be affirmed, without a consideration of the evidence in the case, for the reason 1. that appellant's complaint fails to state facts sufficient to constitute a cause of action against either appellee. The respect in which it is claimed the complaint is defective is in its alleged failure to state facts disclosing a duty on the part of appellees, or either of them, owing to appellant to protect him from injuries, alleged to have been received. This question, as it is here presented, has the same legal aspect as though the complaint had never been assailed by demurrer, and the question of its sufficiency was raised for the first time in this court; and where this is so, if the facts averred in the complaint are sufficient to bar another action for the same cause, the complaint will be deemed sufficient, and its defects cured by verdict. *Major* v. *Miller* (1905,) 165 Ind. 275; *Embree* v. *Emerson* (1905), 37 Ind. App. 16.

It is perfectly manifest that had appellant abandoned this appeal and brought a second action against appellees to recover for this same injury, and in his second complaint cured the alleged defects pointed out by appellees, by the averment of facts clearly imposing a duty upon the part of appellees to exercise reasonable care to

protect appellant from the injury complained of, the judgment in this case would be a complete bar to such action.

This case was submitted to the jury upon the theory that the complaint properly averred every fact essential to create liability on the part of appellees to appellant for the

1. injury complained of, and appellant was defeated because, in the judgment of the trial court, the evidence failed to sustain the averments of the complaint, and the appellant, having been thus defeated, could not ignore the judgment and again return into court with the second complaint against appellees, to recover for the same injury caused by the same alleged acts of negligence, distinguished by a more amplified statement of the facts, showing the relation of parties, and more clearly exhibiting the duty owing by appellees to the appellant to protect him from the injury alleged to have been sustained; hence the decision of this appeal will necessarily turn upon the question as to whether the evidence justified the peremptory instructions given by the court.

If the evidence given upon the trial of a case is insufficient in law to sustain a verdict in favor of a party having the burden of the issue, it is not only proper, but it

3. is the duty of the court, to direct a verdict upon such issue against such party; but if there is any evidence to sustain such verdict, no matter what its weight or character, nor how much it may apparently be overborne by more convincing evidence, conflicting therewith, the decision of the issue must be submitted to the jury. *Pennsylvania Co.* v. *McCormack* (1892), 131 Ind. 250; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25, and cases cited. The evidence, in the sense here used, consists, not only in what directly appears from the testimony of the witnesses, and is shown by writings or exhibits introduced in evidence, but also what may reasonably be inferred from what is thus shown.

Here there were two defendants, and their separate mo-

tions for peremptory instructions were sustained, and if the evidence was such as, viewed in its most favorable

4.   light for appellant, would sustain a verdict and judgment in his favor against either appellee, then, as against such appellee, the judgment must be reversed.

The evidence disclosed the facts hereinbefore related, and, in addition to these, there was also evidence from which the jury might have found that the city's fire alarm and police wires ran through a network of wires belonging to appellee telephone company, attached to the arms of the telephone pole, from which the appellant fell, and in close proximity to it, and that these wires of the city and the telephone company were at all times liable to, and often did come in contact with each other, and that when they did so such contact interfered with the usefulness of both wires, and that in order to keep the wires of the telephone company and the city in good working order, and make them effective to perform their office, it was necessary that servants of the city and of the telephone company should ascend this pole to examine as to trouble on the wires, and to remedy the same. It appears also from the evidence that there were numerous other telephone and telegraph companies, besides appellee, using the streets of the city for their wires, presumably under the same authority as that possessed by appellee, and that in stringing these wires, in crossing over each others' lines, it was necessary that the employes of the city and of all other telephone, telegraph and electric power and light companies, engaged in work, ascend each others' poles to effect the crossing and to keep the lines in working order, and that in doing this work such employes were liable to handle grounded wires; that telephone and telegraph wires carry a harmless voltage of electricity, but that electric light and power wires usually carry dangerous voltages of electricity, and that a light and power wire, coming in contact with telephone and telegraph wires, or any conductor of electricity extending to the ground, at a point where the same is

not properly insulated, will transmit a dangerous current of electricity to such telephone or telegraph wires, or other conductor, and if a person comes in contact with such electric current death or injury inevitably follows; that electric light and power wires are not dangerous if properly insulated; that it cannot be certainly determined by looking at an insulated wire whether or not the insulation is perfect; that a telephone pole, when wet, is a conductor of electricity; that telephone wires contained in a cable are grounded; that it is not customary or proper to attach a telephone cable to the cable seat; that in putting up telephone cables it is the custom to attach the cable temporarily to the cable seat by means of what is known as a "marline string," a nonconductor of electricity, to hold the cable while the wires in the cable are attached to the wires in the box; that the wire cable on the pole involved here had been up for some time prior to the accident; that at the time of the accident it was attached to the cable seat by a small and partly insulated wire, as already stated.

The appellant was informed of trouble in the police alarm wire. He traced the trouble to where the police wire crossed the telephone company's wire, near this pole, and it was necessary, in order definitely to locate the defect, to ascend to near the top of this telephone pole. The city's employes had been expressly authorized, by the president and manager of the telephone company, to climb the company's poles to locate and adjust trouble between the wires, but enjoined not to use spurs in climbing the pole, and for the purpose of ascending this pole the appellant climbed the electric light pole, by the use of spurs, until he reached the steps on the telephone pole, a distance of ten or twelve feet from the ground, and then passed over to the steps on the telephone pole, went up the pole on the southeast side thereof until he reached the light wire, when he placed his left foot on the southwest step of the pole, his left arm around the pole, swung his body around to the west side of the pole, caught

hold of the brace to the cable seat above the light wire, and far enough out from the pole so that his arm was not in contact therewith, and reached up with his left hand to take hold higher up on the pole, when the movement in some way brought his left arm in contact with the light wire, and he was shocked and received the injuries complained of. The appellant could have climbed the pole on the opposite side, and probably could have escaped contact with the wire, as it is shown there was room enough for his body to pass between the two wires. He did not see that the cable seat was attached to the cable in any way. By a careful examination, if his eyesight was good, he might have seen that the cable was attached to the cable seat, but the evidence is such as to warrant the jury in finding that the appellant could not, by a careful observation, distinguish the wire, with which the cable was so attached to the seat, from a string. There was evidence tending to show that the light wire was six or seven years old, and that the insulation upon it near where it was attached to the telephone pole was so defective that the electric current carried over the wire was permitted to escape in such quantities as to shock those passing the wire in climbing the pole, who at the time were in any manner connected with a grounded conductor of electricity, and that this condition had existed for two or three months prior to the happening of the accident.

There are three grounds upon which appellees insist that the instructions of the court were justified. One is the same as that urged against the sufficiency of the complaint—that the evidence fails to show a duty owing by appellees or either of them to appellant, requiring them to exercise care in the respect in which they are charged with negligence, in that the evidence affirmatively shows that the appellant was a trespasser upon the pole, or at most a bare licensee. The second is that the evidence fails to show that the appellees were guilty of negligence proximately causing the injury com-

plained of. The third is that the appellant's own negligence proximately contributed to his injury.

Many authorities are cited to sustain the rule that the owner or occupant of premises is under no legal duty to keep his premises safe for those who enter the same as trespassers or bare licensees. This rule we fully recognize, and we agree with appellees' contention that it matters not, in the application of this rule to this case, whether the telephone pole in question is to be regarded as real estate or personalty. The pole belonged to the telephone company, and if the appellant had no right upon it, or if he went upon it by mere permission of the owner, for the sole benefit of himself or his employer, and upon some business in which the owner of the pole had no interest, every reason of the rule would apply to him, but we are not convinced that the facts shown by the evidence bring this case within the rule invoked.

The uses to which electricity is applied has filled the streets of every city in the country with a network of electric wires, carrying over them electric currents of varying powers and for various purposes. The owners of these utilities derive their right to carry their wires through such streets by license from the city in which their operations are carried on. By granting such license to one, the city is not thereby precluded from granting a like license to others, and all who so use the public streets do so upon an equality of right, and it seems but reasonable to assert that such persons or corporations, accepting and using such licenses from the city, do so subject to the right of the servants of each to climb the poles belonging to the others, and handle the others' wires, in whatever way may be necessary for their erection and maintenance.

The peculiar nature of the business that these telephone, telegraph, light and power companies are engaged in, the liability of their wires to interfere with each other, and,

through the medium of each others' wires, to inflict great damage to the property of each other, and to endanger the lives of their employes and of their patrons —the public—create rights, duties and obligations of these companies, with reference to each other, peculiar to the business. If telephone or telegraph wires come in contact with each other the usefulness of both is destroyed for the time. If the electric light wire happens to come in contact with the wire of a telephone company, at a point where the light wire is not properly insulated, the telephone wire will rob the light wire of its power, and with it not only burn out and destroy the telephone company's switchboards, but may kill and injure its employes and patrons, so not only both companies, but the public as well, are concerned in everything that would tend to prevent such disaster, or remedy any trouble between the wires. The mutual interest of the companies concerned and the safety and protection of the public require that the employes of each company shall be accorded the right to use the others' poles and handle their wires when necessary to locate and remedy defects arising from the crossing of each others' wires, and these considerations would seem to require each company to exercise reasonable care to protect the employes of the other company so engaged. Here it appears that the city's fire alarm and police wires crossed the telephone company's wires, running through a maze of them. The use of these wires facilitated the preservation of peace and good order and the suppression of fires within the city. That they should be kept constantly in good working order, and any interference therewith promptly remedied, is important to the protection of the lives and property of the citizens, and could it be seriously maintained that the telephone company has the right to say to the city, "Your employes shall not touch our pole or wires. Fires may rage and riots progress, but if your wires are out of order, before the firemen can be summoned

or the police called out over your wires, you must bide our time to remedy the defect?" We think not.

Appellees do not seriously question the right of the city to use the telephone pole in correcting trouble upon its police and fire alarm wires, but claim that such right amounts to nothing more than a license by law, and that the duties and obligations of the appellees to one who exercises such license are precisely the same as those which would govern under a bare license or permission given by the owner for one to enter his premises for some purpose of the licensees, in which the owner has no interest, and cite as supporting this contention, among other cases, *Woodruff* v. *Bowen* (1894), 136 Ind. 431, 22 L. R. A. 198, and *New Omaha, etc., Light Co.* v. *Anderson* (1905), 73 Neb. 84, 102 N. W. 89. In the case of *Woodruff* v. *Bowen, supra,* a fireman, in the discharge of his duty, entered upon defendant's premises, to aid in the extinguishment of a fire, and, owing to the negligence of the defendant in constructing the building, the walls collapsed, killing the fireman. It was held that the defendant was not liable; that the fireman was a mere licensee on the defendant's premises, to whom the defendant owed no duty in respect to maintaining his premises in such condition that firemen would be reasonably safe thereon, in putting out fires. The case of *New Omaha, etc., Light Co.* v. *Anderson, supra,* was of a similar character. There was an injury to a fireman, while at work at a fire, because some of the fire apparatus, with which the fireman was engaged at work, came in contact with one of the defendant's light wires. Here the same rule was applied. In other cases, this rule is applied where police officers, in the discharge of their duties, enter premises and are injured by reason of some dangerous obstruction or pitfall thereon. All cases of this class, we think, are to be distinguished from the case here.

In the case of *Chicago, etc., R. Co.* v. *Dinius* (1908), 170 Ind. 222, 231, the Supreme Court said: "The rule well

affirmed by the authorities is that under the law, a person is required to anticipate or foresee and guard against what usually happens or is likely to happen, but this rule does not require him to anticipate or foresee and provide against that which is unusual and not likely to happen, or, in other words, that which is only remotely and slightly probable.  *  *  * A wrongdoer cannot be held responsible for a consequence which is merely possible according to occasional experience, but only for a result or consequence which is probable according to the ordinary and usual experience of mankind.'' It is this principle, that lies at the base of the rule announced in those cases, which exempts the property owner from liability for personal injuries to those who on extraordinary occasions enter their premises in the discharge of official duties, but we apprehend that it could not be applied where the conditions are such that the party charged with negligence might reasonably have anticipated that the injury complained of, or one of like character, would result from his negligent act. Here the use of the telephone pole, by the city's employes, charged with the duty of keeping the city wires in order, was not an extraordinary or unusual occurrence, such as that which would bring firemen on a property owner's premises to extinguish a fire, or policemen in pursuit of an offender, but it was a matter of common occurrence, something usual and likely to occur in the conduct of the business of both companies and the city. The conditions were such that the appellees were bound to anticipate that employes of the city, or of their own or of another telephone or telegraph company, would, in the performance of duty, use this pole, as appellant did, and that if their wires were not properly guarded said servants would be liable to receive injuries therefrom. We think the nature of the business conducted by the parties and the conditions were such, that an invitation to use appellees' poles was necessarily implied, and this use was not for the benefit of the party making use of the invitation alone, but for the benefit of both

parties, and a duty necessarily rested upon each company maintaining the poles and wires, not only to protect their own employes, but the employes of the city having the right to use them. The duties and obligations of the respective parties to each other and to their respective employes, in this case, are very analogous to those of railways and other common carriers, whose lines intersect or pass over premises in which both have rights, as illustrated by the cases of *Indiana, etc., R. Co.* v. *Barnhart* (1888), 115 Ind. 399, and *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470. In the case last cited it is said: ''We have in the complaint a statement of facts going to show that plaintiff was lawfully on the premises or railroad of appellant at the time he was injured. He was there, not as appellant's servant, nor merely at its sufferance, but in a legal sense upon the invitation given through the contract entered into between the two railroad companies. Under these circumstances, appellant owed him a legal duty to exercise reasonable care to keep all parts of its road used by his employer, under the contract in question, in a reasonably safe condition, so as to provide for the protection of the servants of said Chicago Junction Railroad Company, while they were at work in operating the train of the latter over appellant's road.''

We think the principle announced in these cases should govern here. It is true that in the case of *Chicago, etc., R. Co.* v. *Vandenberg, supra,* it is said that appellee was on the premises of appellant, upon the invitation of appellant, given through the contract between the two companies, and in this respect the case at bar may be distinguished from the case referred to; but, in the judgment of this court, the circumstances shown by the evidence heretofore referred to, relative to the peculiar character of the business in which the parties were engaged, the relation of the city's wires to appellees' wires, and the imperative necessity, in the successful operation of all the wires, that the employes of each should use the pole properly to locate and remedy trouble arising

from crossed wires, are fully as effective to raise the inference of an invitation on the part of appellees to the city's servants as if an invitation were given through the medium of a formal contract between the city and the company.

It is insisted by appellees, that, inasmuch as the appellant avers in his complaint an express invitation from the telephone company to use the pole in question, appellant is bound by the averments in his complaint, and is not authorized to recover upon an implied invitation growing out of the circumstances shown. We think there is no merit in this contention, and that it is immaterial to appellant's case whether the duty of the appellees to exercise reasonable care to protect the appellant from injury in climbing the pole arose from an express or implied invitation. The evidence showed express permission given by the telephone company to the city's employes to use its poles whenever necessary to keep the city's wires in order, and it is argued that it was under this express permission that the appellant acted in climbing the pole, and that the permission was a bare license, granted for the benefit of the city alone. This contention does not fit the facts disclosed by the evidence. The thing which affected the city's wires, and which the city's employes were given permission to use the poles to discover and adjust, also affected the telephone company's lines, and when appellant remedied trouble on the city's wires he likewise remedied a trouble on the telephone company's wires. and where there is a mutuality of interest in the subject to which the visitor's business relates, an invitation is implied from the permission given, as is clearly shown by the authorities cited by appellees. 3 Elliott, Railroads (2d ed.), 1249; *Plummer* v. *Dill* (1892), 156 Mass. 426, 31 N. E. 128, 32 Am. St. 463; *Hart* v. *Cole* (1892), 156 Mass. 475, 31 N. E. 644, 16 L. R. A. 557; *Benson* v. *Baltimore Traction Co.* (1893), 77 Md. 535, 26 Atl. 973, 20 L. R. A. 714, 39 Am. St. 436; *Bennett* v. *Louisville, etc., R. Co.* (1880), 102 U. S. 577, 26 L. Ed. 235; 2 Jaggard, Torts, p. 896; Beach,

Contrib. Neg. (3d ed.), §51; *Rink* v. *Lowry* (1906), 38 Ind. App. 132. Whether the invitation is to be implied from the circumstances or from the express permission given, the rights and duties of the parties are the same.

The point is made by appellees, conceding that appellees owed appellant a duty to exercise ordinary care in protecting him from danger while engaged at work on the pole,

9. the evidence shows the discharge of this duty, by providing the steps upon the pole, which, had the appellant used, instead of taking hold of the brace to the cable seat, no injury would have been sustained. The charge of negligence made against the light company is that it failed properly to insulate its wire to prevent the escape of the electric current, and that by reason of this negligence the electricity did escape from its wires, and caused the injury complained of. This charge is not answered by saying that appellant might have pursued some other line of conduct on the occasion in question, and thereby have escaped injury. If he might have done so, the fact was proper to consider on the question of contributory negligence, but it does not answer the charge of negligence made against the appellees. In order to sustain this charge, it was not necessary that the appellees should have anticipated the particular accident that happened. It is sufficient, in this respect, if conditions were negligently suffered to arise or continue, by the appellees or either of them, out of which it might reasonably have been anticipated that injury in some form might follow to some person, and that the injury complained of is the natural and reasonable consequence of the negligence. 1 Thompson, Negligence (2d ed.), §59; *Evansville, etc., R. Co.* v. *Bailey* (1909), 43 Ind. App. 153, and cases cited.

To make out the charge of negligence preferred against the light company, it was not essential that appellees should have anticipated that appellant or some one else would

10. be shocked by a connection made between its defectively insulated light wire and the grounded wire

cable. It was sufficient, in this respect, if a grounded connection was likely to be made between their defective wires and any conductor of electricity with which one using the pole might come in contact and be injured. And there was ample evidence to justify the jury in the conclusion that if an electric light wire, situated as it was, was not properly insulated some person using the pole was liable to be injured on that account. It is insisted that the light company did not know, and so far as the evidence was concerned, had no means or opportunity of knowing, that there was a metallic connection between the cable and the cable seat. From what we have already said, this was not important. There was evidence from which the jury might have found that the light company did know, or by the exercise of such care as the circumstances imposed upon it could have known, that its wire was not properly insulated at the place where persons in climbing the pole were likely to come in contact therewith, and that its leaving it in that condition was an act of negligence.

It is also insisted by appellees that, inasmuch as the complaint charges acts of joint and concurring negligence in the two companies, proximately causing the injuries complained of, in order to sustain his case appellant was required to establish the negligence of both companies, and that a failure of proof as against either would require a verdict in favor of both, and that the evidence is entirely insufficient to sustain the verdict against the telephone company, for the reason that it is not shown that the telephone company had any knowledge of the metallic connection between the telephone seat and the cable, or any opportunity of knowing that there was such connection, and that it had no opportunity of knowing and was not chargeable with notice of any defect in the insulation upon the electric wire. We do not agree that the conclusion follows that it is necessary to appellant's case that the evidence shall show that both defendants were guilty of negligence charged against each, and

resulting in the appellant's injury. There may be several proximate causes of a particular injury, some of them innocent, and for which no liability exists on the part of any one; others may be the result of tortious acts of one or more. When this is true, each of the tort-feasors is jointly and severally liable for the injury resulting, and the fact that accidental or innocent causes or conditions and concurring wrongful acts of other parties join to produce the given injury does not affect the liability of any one of the wrongdoers. Here, if the electric company were guilty of negligence, which proximately contributed to appellant's injury, the fact that the attachment of the telephone company's wire cable to the telephone seat concurred in producing the injury, and that for this incidental connection the telephone company was not guilty of negligence, would not affect the liability of the electric company. The connection between the cable seat and the cable was a mere condition, which in and of itself would have been entirely harmless. It was a condition upon which the electric light company's negligence operated and produced the injury.

Can it be said that there was not sufficient evidence to carry to the jury the question of the telephone company's negligence, as charged? There was ample evidence to

12. warrant the conclusion that the light wire was on the telephone pole, with the knowledge and consent of the telephone company, and the jury might well say that the close proximity of the light wire to the metallic telephone seat created a danger to those who used the pole, if a metallic connection were made between the grounded cable and this cable seat, and that to make such connection was negligence, and therefore the question of the telephone company's negligence must turn upon whether the evidence would have warranted the inference that the wire connection between the cable seat and the cable was made in the construction of the telephone company's line. The evidence showed that in putting up wire cables, such as the one on the telephone

company's line, in making the connection between the cable
wires and the cable-box, it was necessary to suspend the
cable to the cable seat while the work was being done, and
that this was usually done by means of what is termed a
"marline string." Here the cable was found suspended to
the cable seat by means of a wire, precisely as it would have
been by a string while the work of connecting the cable with
the box was in progress, and the jury might easily have in-
ferred that this wire was used instead of a string in doing
the work, and that the persons who did the work had neg-
lected to remove it on completing the job. No other reason
for the wire's being there, as it was, has been suggested, and
none other occurs to us. If this was not the way in which
the wire became attached to the cable and the seat, such fact
is peculiarly within the knowledge of the telphone company,
and if this explanation of its presence is not correct, the com-
pany was called upon to show it.

It is insisted by appellees that appellant was guilty of con-
tributory negligence in ascending the pole on the wrong side,
and in not observing that the cable was attached to
13. the cable seat by wire. Whether the appellant was
guilty of contributory negligence was a question pe-
culiarly for the jury, and could only become a question of
law for the court when the circumstances were such that but
one inference could be drawn by reasonable minds with refer-
ence to the appellant's conduct upon the occasion. The ap-
pellant did not, as a matter of fact, know that the cable was
attached to the cable seat by the wire, and the jury might well
have concluded that he had the right to assume that no such
condition existed. That was not the proper method by which
the cable was held, and when any attachment was used tem-
porarily to hold the cable in place, while the wires were being
attached in the box, it was a string, not a wire. If the ap-
pellant had seen this wire from the ground, the jury might
well have found that its appearance justified the belief that
it was a string, such as was customarily used for that pur-

pose, and unless the cable seat was grounded there was no more danger in grasping the brace thereto than there was in grasping the steps; and as to ascending the pole on one side rather than the other, it was a question more of convenience than of safety. The wires were on both sides of the pole and the jury might well have believed that a person ascending the pole on either side was liable to touch a wire, and clearly a question of appellant's negligence in the matter was, under the facts disclosed, for the jury.

The judgment of the court below is reversed, with instructions to grant a new trial, with leave to the parties to amend their pleadings.