**Martha Anne BOYLE, Executrix of the Estate of John T. Boyle, Deceased, et al., Appellants (Plaintiffs),**

v.

**ANDERSON FIRE FIGHTERS ASSOCIATION LOCAL 1262, AFL–CIO, et al., Appellees (Defendants).**

No. 2–1284–A–381.

Court of Appeals of Indiana, Second District.

Sept. 29, 1986.

Lewis E. Jones, Marion W. Withers, Anderson, Frank E. Spencer, Indianapolis, Ronald K. Fowler, Anderson, for appellants.

Walter F. Lockhart, John C. Ruckelshaus, Indianapolis, for appellees Professional Fire Fighters of Indiana, AFL–CIO, Thomas H. Miller and Brian J. Reed.

William Byer, Anderson, John C. Ruckelshaus, Indianapolis, Thomas A. Woodley, Washington, D.C., Charles F. Braddock, Scott L. Webb, Anderson, Patrick N. Ryan, Marion, for appellees Anderson Fire Fighters Ass'n, Local 1262, AFL–CIO, an Unin-

corporated Ass'n and individual defendant Firemen.

John A. Farr, Jr., Ralph E. Sipes, Busby, Austin, Cooper & Farr, Anderson, for appellee City of Anderson.

Thomas A. Woodley, Erick J. Genser, Mulholland & Hickey, Washington, D.C., Jack B. Welchons, Patrick N. Ryan, Ryan & Welchons, Marion, for appellees Intern. Ass'n of Fire Fighters, Jack Gannon and Donald R. Wolf.

BUCHANAN, Chief Judge.

## CASE SUMMARY

This case is a consolidated appeal of four separate actions brought by the plaintiff-appellants, property owners or insurance companies of property owners [hereinafter collectively referred to as Owners], to obtain damages for real and personal property destroyed by fire during a labor strike by the fire fighters of Anderson, Indiana. In each of the four cases, the owners sued each of the defendant-appellees, the City of Anderson (City), 109 striking Anderson Firefighters (Strikers), the Anderson Fire Fighters Association Local 1262 (Local Union), the Professional Fire Fighters Union of Indiana (State Union), and the International Association of Fire Fighters (International Union), with the trial court entering summary judgment in favor of all defendant-appellees. The Owners appeal, contending the trial court's judgment is contrary to law because it rests on the erroneous resolution of questions of first impression in Indiana and because there are genuine issues of material fact.

We affirm in part and reverse in part.

## FACTS

The facts most favorable to the Owners, the non-moving party, reveal that during the month of August, 1978, the City was engaged in labor negotiations with its fire fighters to arrive at a new agreement to replace the existing labor agreement that was scheduled to expire on December 31, 1978. Apparently, the negotiations deteriorated because on August 26, 1978, the fire fighters commenced an illegal work stoppage.[1] Despite the illegal strike, negotiations continued, and the State and International Unions were invited to assist the Local Union in negotiations even though the State and International Unions were not parties to the collective bargaining agreement between the Local Union and the City. In addition, the State and International Unions apparently played no part in the Local Union's decision to call the strike because the Local Union is a separate, autonomous body from either the State or International Unions and vested with exclusive control over the decision to call a strike. Also, agents of the State and International Unions did not come on the scene until after the strike began.

Nevertheless, there is some disputed evidence that agents of the State and International Unions aided, encouraged, supported, and even directly participated in some aspects of the illegal strike after they arrived on the scene. For example, one State Union representative is alleged to have stated at one negotiating session that he and members of the Local Union had met with members of the fire departments of neighboring communities and that the City should not expect help from these departments in the event of fire. At another negotiating session, a representative from the International Union is reputed to have affirmed the International's support of the illegal strike by pointing out that the International Union maintained a fund with which it could assist the Strikers and pay fines imposed on them.

On the evening of August 29, 1978, James E. Freeman (Freeman), an assistant city attorney assigned to negotiate for the City, received a telephone call from an unidentified party. This party informed Freeman that the City's latest offer had been rejected by the Union and that Freeman

---

1. Strikes by public employees were declared illegal by the Indiana Supreme Court in the case of *Anderson Fed'n of Teachers v. School City of* *Anderson* (1969), 252 Ind. 558, 251 N.E.2d 15, *cert. denied,* (1970), 399 U.S. 928, 90 S.Ct. 2243, 26 L.Ed.2d 794.

had better hope that there were no major fires in the City that evening. Early the next morning, at approximately 4:30 a.m. on August 30, 1978, a fire began in a lounge adjacent to the Owner's property. The City responded to the fire with a few nonstriking fire fighters, the fire chief, five or six probationary firemen, and all the equipment these men could bring. The Strikers also responded to the fire in a variety of ways. At some point, a small group of Strikers entered the burning or threatened buildings to make an inspection. After concluding that there was no risk to human life, the Strikers retreated from the buildings and refused to offer any further assistance. Some Strikers fought with one Anderson fire fighter who was responding to the call. The Strikers physically removed him from the scene and prohibited him from bringing a piece of firefighting equipment to the fire and prevented him from otherwise assisting in the fighting of the fire.

Meanwhile, the nonstriking fire fighters attempted to gain control over the blaze. Unfortunately, in the absence of assistance from the Strikers, the City's available manpower and equipment were insufficient to extinguish or control the spreading fire. Accordingly, the City placed calls for mutual aid to the volunteer fire departments of the surrounding communities of Edgewood, Chesterfield, and Richland Township. Still the Strikers refused to lend a hand. Instead, the Strikers stood around to watch the buildings burn and set up picket lines to keep the units from the surrounding communities from reaching the fire. It was only after units from all three communities had suffered delay that they were allowed to approach the fire. The mutual aid companies were permitted to pass through the picket lines when an unidentified person shouted that the Union man said to let them in. These companies then assisted the nonstriking fire fighters in taking control of the area and combating the fire. Despite the efforts of the nonstriking fire fighters and the mutual aid companies, and as the Strikers watched while maintaining their refusal to assist,

the fire ultimately destroyed at least five large commercial buildings covering approximately one-half of a city block.

At some point during the course of the fire, it was discovered that a fire hydrant on one corner of the block threatened by the fire was inoperable. The City had a contract with the Anderson Municipal Water Utility to maintain all City fire hydrants and the City had knowledge of the defective hydrant for some time prior to the fire.

Most of the Owners were prohibited from entering the threatened or burning buildings to retrieve property or from fighting the fire themselves, although some Owners did manage to save some personal property.

Subsequently, on August 31, 1978, the City obtained a temporary restraining order enjoining the Strikers from continuing their illegal strike. Thereafter, the Owners initiated their separate actions for damages, all of which ended with the trial court's entry of summary judgment in favor of all the defendants. Although the trial court accepted as true the facts as we have presented them, it concluded that there were no genuine issues of material fact relative to the law of the case and, in essence, determined that the City, the Strikers, and the unions could not, as a matter of law, be held liable for the damages arising out of the fire.

## ISSUES

Generally stated, the issues presented by this appeal are as follows:

1. Did the trial court err in concluding that, as a matter of law, the City could not be held liable for any of the damages arising out of the fire?

2. Did the trial court err in concluding that, as a matter of law, the Strikers could not be held liable for damages?

3. Did the trial court err in concluding that, as a matter of law, the Unions could not be held liable for damages?

## DECISION

ISSUE ONE—Did the trial court err in concluding that, as a matter of law, the

City could not be held liable for any of the damages arising out of the fire?

PARTIES' CONTENTIONS—The Owners contend that the City can be held liable under a variety of theories: negligence in failing to maintain the fire hydrant, negligence in failing to provide an adequate alternative method of fighting fires in light of the strike, negligence in prohibiting the Owners from entering the burning buildings to retrieve property or to fight the fire by alternative means, negligence in failing to take legal action to end the strike before the fire, and vicarious liability for the acts of the Strikers under the doctrine of respondeat superior.

The City responds that under the common law it is not liable for failing to maintain the hydrant, that the Indiana Tort Claims Act[2] provides immunity from liability for any negligence in the decisions it made concerning legal action to end the strike and how it would fight the fires in light of the strike, and that it is not liable for the actions of the Strikers under the doctrine of respondeat superior because their refusal to perform their duty and their other overt acts of interference were outside the scope of their employment with the City.

CONCLUSION—The City is not liable for damages under any theory presented by the Owners.

When reviewing a grant of summary judgment, this court will apply the same standard used by the trial court in first instance. *Lafary v. Lafary* (1985), Ind.App., 476 N.E.2d 155. Summary judgment is appropriate when the pleadings, affidavits, testimony, and products of discovery demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Ewing v. Board of Trustees* (1985), Ind.App., 486 N.E.2d 1094, *trans. denied; McMahan v. Snap On Tool Corp.* (1985), Ind.App. 478 N.E.2d 116; Ind.Rules of Procedure, Trial Rule 56(C).

Although the issue has not been addressed in many years, the common law in Indiana has long recognized that a municipality is not liable to an owner of property destroyed by fire even though the destruction may have resulted from the City's failure to provide suitable equipment or an adequate supply of water with which to fight the fire, i.e., insufficient water pressure, insufficient lengths of hose, or improperly functioning hydrants. *Larimore v. Indianapolis Water Co.* (1926), 197 Ind. 457, 151 N.E. 333; *Trustees v. New Albany Waterworks* (1923), 193 Ind. 368, 140 N.E. 540; *Robinson v. City of Evansville* (1882), 87 Ind. 334. Nor is a city subject to liability for negligently failing to timely provide an adequate number of fire fighters who are competent to fight the fire and fit for duty. *Robinson, supra.* Thus, under the common law, the City cannot be held liable for its failure to maintain the fire hydrant or for its failure to provide an adequate alternative method of fighting the fire in response to the strike.

In more recent times, this court has held that the City of Hammond was immune from liability when it was alleged that the plaintiff's restaurant was destroyed by fire due to the city's negligence in failing to provide adequate equipment and manpower to fight the fire and negligence in the manner in which the City decided to fight the fire. *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184. As the court observed in *Cataldi,* IC 34-4-16.5-3 provides: "A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from: ... (6) the performance of a discretionary function...." In defining a discretionary function, the court relied on the much-quoted language of *Adams v. Schnieder* (1919), 71 Ind.App. 249, 255, 124 N.E. 718, 720: "A duty is discretionary when it involves on the part of the officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and in the absence of corrupt motives in the exer-

---

2. Ind.Code 34–4–16.5–1 to –19 (1982).

cise of such discretion he is not liable." *Cataldi, supra,* at 1186. The court then concluded that Cataldi was seeking damages for the negligent performance of a discretionary function. As stated in *Cataldi,* "decisions as to how to fight a particular fire require that judgments be made regarding appropriate methods and techniques for the unique situation presented by that fire." *Id.* at 1187. This same reasoning applies with equal force to the City's judgments concerning alternative means to fight the fire in light of the strike, as it does to the decisions made during the fire regarding how the fire should be fought, including whether to allow the Owners to fight the fire or to enter the burning structures to retrieve their property. Because these decisions required the exercise of discretion and judgment, the City is immune from liability. *Id.;* IC 34–4–16.5–3; *see also Ayres v. Indian Heights Volunteer Fire Dep't* (1986), Ind., 493 N.E.2d 1229.

■ Nor can the City be subject to liability under the theory that it was negligent in failing to take prompt legal action to force the Strikers back to work by obtaining an injunction against the illegal strike. IC 34–4–16.5–3 provides: "A governmental entity or an employee acting within the scope of his employment is not liable if the loss results from: ... (7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations...." Thus, the City is immune from liability for failing to take action to end the strike even though the strike violated the contract with the City, the fire department's rules and regulations, and the law as expressed by the Indiana Supreme Court in *Anderson Fed'n of Teachers, supra.*

■ Finally, the City cannot be held liable for the acts of the Strikers under the theory of respondeat superior. Under this doctrine, vicarious liability can be imposed on an employer for the wrongful acts of an employee that are committed within the scope of his employment. *City of Crawfordsville v. Michael* (1985), Ind.App., 479 N.E.2d 102, *trans. denied; Gomez v. Adams* (1984), Ind.App., 462 N.E.2d 212, *trans. denied; Trinity Lutheran Church, Inc. v. Miller* (1983), Ind.App., 451 N.E.2d 1099, *trans. denied.* However, an employer will not be held liable for the independent torts of an employee "where the act is done on the employee's own initiative and is not done in the service of the employer." *City of Crawfordsville, supra,* at 104. Here, the Strikers were acting strictly on their own behalf. Their actions were motivated by self-interest—an interest patently inconsistent with the City's interest in providing uninterrupted fire protection. Given that both their refusal to fight the fire and their acts of interference with the efforts of others attempting to extinguish the blaze were intentional as well as unlawful, it is not difficult to conclude that their acts were so outrageous as to be incompatible with the duties owed the public and the City and beyond the scope of their employment. *See Seymour Nat'l Bank v. State* (1981), Ind., 428 N.E.2d 203. As such, we have no hesitation in concluding that the Strikers were not acting on behalf of the City and, therefore, were not acting as employees as defined by IC 34–4–16.5–2.[3] Consequently the City is not liable for any loss from their acts. IC 34–4–16.5–3(9).[4] In sum, the trial court did not err in concluding that, as a matter of law, the City was immune from liability for the damages arising out of the fire.

ISSUE TWO—Did the trial court err in concluding that, as a matter of law, the Strikers could not have been held liable for damages?

PARTIES' CONTENTIONS—The Owners argue that the Strikers engaged in a civil

---

**3.** IC 34–4–16.5–2 provides: "As used in this chapter: (1) 'Employee' and 'public employee' means [sic] a person presently or formerly *acting on behalf of a governmental entity* whether temporarily or permanently or with or without compensation...."

**4.** IC 34–4–16.5–3(9) provides that a governmental entity is immune from losses that result from "the act or omission of someone other than a governmental entity employee...."

conspiracy to conduct an illegal strike and other tortious acts which breached duties owed the Owners and which are not protected by the Tort Claims Act. Thus, they assert, the Strikers may be held liable for the damages proximately caused by their willful and wanton misconduct.

The Strikers counter that they were under no legally enforceable duty to fight the fire, that they had no malevolent intent to harm the Owners and, thus, the illegal strike was not a conspiracy and creates no legal claim in favor of the Owners. They conclude that there is no recognized cause of action in tort and no basis for the Owners to recover from the Strikers under Indiana law.

CONCLUSION—The trial court erred by concluding that the Strikers could not be held liable for the reasonably foreseeable consequences of their intentional, wrongful acts.

As yet, no Indiana case has addressed the subject of personal liability for damages resulting from an illegal strike by public employees. Thus, we are forced to consider a number of foreign cases in arriving at our decision.

### Civil Conspiracy

■■■ We begin with a discussion of civil conspiracy. A civil conspiracy is a combination of two or more persons who engage in concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means. *Indianapolis Horse Patrol, Inc. v. Ward* (1966), 247 Ind. 519, 217 N.E.2d 626. However, there is no independent cause of action in tort based solely on the existence of a civil conspiracy. Rather, the cause of action is for the damages that result from the conspiracy. *Id.* In other words, allegations of a civil conspiracy are just another way of asserting concerted action in the commission of a tort. Thus, in *Bottoms v. B & M Coal Corp.* (1980), Ind.App., 405 N.E.2d 82, an action involving the destruction of property during a violent raid on the employer's premises by striking employees, this court stated: "The judgment of the trial court

found the UMW and 191 individuals jointly and severally liable for the damages caused by the raid on the B & M Coal Dock. This judgment was proper if the evidence demonstrated appellants acted jointly or pursuant to a conspiracy." *Id.* at 90 (footnote omitted). The court went on to say: "[E]ach participant in the conspiracy may be held responsible as a joint tortfeasor for damages caused by the wrongful or contemptuous acts regardless of the degree of active participation." *Id.* In the same vein, the court in *Pasadena Unified School Dist. v. Pasadena Fed'n of Teachers, Local 1050* (1977), 72 Cal.App.3d 100, 140 Cal.Rptr. 41, held that the efforts of the individual members and the union to induce other members to engage in an illegal strike and to breach their employment contracts with the employer constituted torts because "a strike by public employees is neither a lawful object of nor a lawful means to employ in a labor dispute." *Id.* at 111, 140 Cal.Rptr. at 47–48. More importantly, the court held that an unlawful strike itself constitutes a tort for which damages may be recovered, *id.* at 112, 140 Cal.Rptr. at 48, concluding: "All those who aid and abet in the commission of an intentional tort are equally liable with the party directly committing it." *Id.* at 113, 140 Cal.Rptr. at 49, (citing 4 RESTATEMENT OF TORTS § 876 (1939)).

Thus, there is authority for the conclusion that conspiring participants in a strike may be held personally liable in damages for harm caused by their concerted misconduct. The next question is whether striking public employees are immune from such liability.

### Immunity

■■■ The Strikers are not immune from liability for their acts. We have already concluded that the Strikers' behavior was so inconsistent with their responsibilities as fire fighters as to be outside the scope of their employment. The Strikers were specifically employed to provide fire protection to the residents of Anderson. And yet, even though they were on the scene and

must have known that destruction was certain to follow from their wrongful conduct, they not only refused to perform their duty to fight the fire, but actually engaged in affirmative acts intended to prevent others from fighting the fire. The strike itself constituted illegal action, *Anderson Fed'n. of Teachers, supra,* and their interference with other fire fighters violated Ind.Code 35–44–3–8 (1982) which makes it a class A misdemeanor to interfere with a fireman in the performance of his duty. Their conduct was wholly incompatible with their duties as public employees, entrusted with the safety of the lives and property of the public.

In *Roberts v. State* (1974), 159 Ind.App. 456, 464, 307 N.E.2d 501, 506, we observed: "Indiana courts have long recognized that public employees or officers will be individually liable if, in performing their duties, they act with 'corrupt motives' or evil design." It has long been the law in Indiana that governmental immunity will not protect a public employee if his actions are not taken in good faith and without corrupt motives or purpose or are otherwise outside the scope of his employment. *See, e.g., Seymour, supra; Wallace v. Feehan* (1934), 206 Ind. 522, 190 N.E. 438; *Board of Comm'rs v. Briggs* (1975), 167 Ind.App. 96, 337 N.E.2d 852, *trans. denied; Roberts, supra; Adams, supra; see also* IC 34–4–16.5–3.

### Duty

If the Strikers are not immune from liability as public employees then we must determine if they are liable as tortfeasors. The general rule of law is that when a tortfeasor voluntarily commits a wrongful act in reckless disregard of the natural and probable harm that is likely to follow, the law presumes that the tortfeasor intended the consequences proximately caused by the intentional act, and the tortfeasor may be held liable therefore. *See Mercer v. Corbin* (1889), 117 Ind. 450, 20 N.E. 132; *Singer Sewing Mach. Co. v. Phipps* (1911), 49 Ind.App. 116, 94 N.E. 793, *trans. denied; Miller v. Miller* (1897), 17 Ind.App.

605, 47 N.E. 338; W.L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 8 (4th ed. 1971); *see also McKeown v. Calusa* (1977), 172 Ind. App. 1, 359 N.E.2d 550, *trans. denied* (liability may be predicated on a failure to act). This principle has been applied to permit actions against striking public employees in at least four reported cases. *See Pasadena, supra; Berger v. City of University City* (1984), Mo.Ct.App., 676 S.W.2d 39, *State v. Kansas City Fire Fighters Local 42* (1979), Mo.Ct.App., 585 S.W.2d 94, *trans. denied; Caso v. District Council 37* (1973), 43 A.D.2d 159, 350 N.Y.S.2d 173.

As in Indiana, strikes by public employees are unlawful in California, Missouri, and New York. The policy behind this prohibition is not so much for the benefit of the governmental employer as it is to protect the public from an interruption of essential governmental services. *See Anderson Fed'n of Teachers, supra; Caso, supra.* In fact, it is the inevitability of harm to the public that led to the prohibition against strikes by employees. *Caso, supra.* In *Caso,* the court permitted a common law nuisance action to recover damages for the harm caused to the waters and beaches of Nassau County when approximately one billion gallons of raw sewage were dumped into Long Island Sound as a result of an illegal strike by the public employees of Manhattan Sewage Treatment Plants. The court rejected arguments that the law does not recognize a cause of action for damages against striking public employees and observed that the prohibition against strikes by public employees and the general welfare of the public are best served by allowing members of the public a remedy when injured by the strikers' violation of the law. The court also reasoned:

"[There is no] wisdom in a decision which puts the 'right' of a public union to engage in illegal activities entirely beyond the court's ability to find suitable redress, particularly in the compelling circumstances of the instant case, where the union activities endangered the lives and health of millions of persons and

caused possibly irreparable damage to the environment."

*Id.* at 162–63, 350 N.Y.S.2d at 177.

Similarly, in *Kansas City Fire Fighters,* the court remanded an action against the fire fighters' union and its individual members by explaining that strikes by public employees were illegal and that the facts disclosed that the striking union had "willfully and intentionally violated the law and its obligation to the City and thereby acted in reckless disregard for the safety and welfare of the people of Kansas City." *Id.* at 96. In remanding the case to allow the State an opportunity to pursue its claim under a tort theory, the court gave strong indications that a tort theory might prevail by relying on *Pasadena, supra,* which held that participation in an unlawful strike is itself a tort for which damages may be recovered. *Kansas City Fire Fighters, supra.*

▬ In sum, there is adequate support for the proposition that the Strikers owed the Owners a duty not to strike or, conversely, the Strikers owed the Owners a duty to fight the fire. They were employed by the City to fight fires and were bound by a labor agreement which expressly recognized this duty as an essential public service. *Supplemental Record* at 477–78. This agreement was clearly intended to benefit the residents of Anderson by insuring the uninterrupted performance of that service. *Id.* Moreover, the rules and regulations of the Anderson Fire Department acknowledged the Department's duty to protect the lives and property of the citizens of Anderson, *record* at 450, and provided that the chief or his assistant would be in charge of the fighting of all fires. *Id.* at 451. These same rules also provided that all members of the Department were subject to call for emergency duty at anytime and that they were required to attend all large fires. *Id.* at 454. It is undisputed that this was a large fire and that all Anderson fire fighters were required to assist. It is apparent that the Strikers had no discretion to decide whether they would fight this fire or how it should be fought.

Rather, *it was their affirmative, ministerial duty to attend the fire and fight it according* to the instructions of their superiors. This they willfully and wantonly failed to do in reckless disregard of the consequences.

▬ If the duty breached is of a ministerial nature, it matters not that the duty may be owed to the public at large instead of to an individual specially. The breach of a *ministerial* duty owed the public at large is not protected by the Tort Claims Act and such breach will support an action for damages by an individual proximately harmed thereby. *See Maroon v. State* (1980), Ind. App., 411 N.E.2d 404, *trans. denied; Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, *trans. denied; see also Briggs, supra.*

▬ Finally, the Strikers also owed a duty not to interfere with the efforts of other fire fighters to extinguish the fire. *Berger, supra.* In *Berger,* the fire fighters of University City were engaged in an illegal strike. In response to a fire, the striking fire fighters arrived at the scene and began picketing. When firemen from surrounding communities arrived to fight the fire, the picketing fire fighters threatened them with physical harm. As a result, the nonstriking firemen refused to fight the fire, and the building was completely destroyed. The property owners brought an action against, among others, the fire chief, the union, and its president, to recover damages for the destruction of the property. After the action against the fire chief and other defendants was dismissed, the cause proceeded to trial against the union and its president resulting in a judgment in favor of the property owners for more than one million dollars. The property owners, however, appealed the dismissal of the action against the fire chief on the grounds that he personally interfered with the efforts of the neighboring firemen to fight the fire. The Missouri Court of Appeals reversed the trial court's dismissal by holding that such allegations were sufficient to state a cause of action against the fire chief as an individual. *Id.*

Although we have found no Indiana case recognizing the common law duty not to interfere, presumably relied on in *Berger,* at least one Indiana case has held that a similar duty was created by a statute. In *Cleveland, C., C. & St. L. Ry. v. Tauer* (1911), 176 Ind. 621, 96 N.E. 758, it was determined that a statute which made it a misdemeanor for a train to remain standing over an intersection was intended to keep the thoroughfares open for traffic, in part, to protect persons whose property was threatened by fire. Consequently, the Indiana Supreme Court concluded that the statute created a duty to the public, the breach of which would support an action for damages by one whose property was harmed as a result of a delay in the fire company's response caused by a train. *Id.* Similarly, IC 35–44–3–8 makes it a misdemeanor to interfere with or obstruct the efforts of fire fighters to do their duty. Although IC 35–44–3–8 is somewhat different in nature than the statute considered in *Tauer,* both share at least one common purpose: to protect the public from the harm that results when fire fighters are delayed by interference with their efforts to do their duty. Thus, following the supreme court's reasoning in *Tauer,* we conclude that the Strikers were under a duty not to interfere with the efforts of other fire fighters to extinguish the fire. Consequently, the Strikers' breach of this duty will support an action for damages by the Owners whether we recognize the duty as one imposed by the common law, as in *Berger,* or by statute, as in *Tauer.*

The cases relied on by the Strikers are not persuasive. It is true that there are a few cases in which the courts have declined to recognize an action for damages against striking public employees. *See Lamphere Schools v. Lamphere Fed'n of Teachers* (1977), 400 Mich. 104, 252 N.W.2d 818; *Burns Jackson Miller & Spitzer v. Lindner* (1983), 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459; *Jamur Prods. Corp. v. Quill* (1966), N.Y.Sup.Ct., 51 Misc.2d 501, 273 N.Y.S.2d 348; *Fulenwider v. Fire Fighters Ass'n Local Union 1784* (1982), Tenn., 649 S.W.2d 268; *Burke & Thomas,*

*Inc. v. International Org. of Masters, Mates, and Pilots* (1979), 92 Wash.2d 762, 600 P.2d 1282. The Strikers contend that these cases establish the rule that damages resulting from an illegal strike by public employees cannot be recovered because there is no cause of action in tort. But these cases do not stand for such a sweeping proposition. For example, the *Lamphere, Jamur,* and *Burke & Thomas* decisions concluded that no private right of action was available because a comprehensive state statute dealing with strikes by public employees did not provide for a private remedy. In light of the statutes, the court in each case concluded that the creation of a private remedy for those injured by striking public employees was a subject for the legislature, not the court. *See Lamphere, supra; Jamur, supra; Burke & Thomas, supra.* These cases are of little precedential value because Indiana has no such statute. The *Burns Jackson* case also fails to support the Strikers' position because it implicitly recognized that a strike by public employees might support a private right of action for damages. Nevertheless, for reasons not relevant to the unique circumstances of this case, the court affirmed the dismissal of the plaintiffs' complaints on the grounds that the allegations were insufficient to state a cause of action. *Burns Jackson, supra.*

In *Fulenwider,* the Supreme Court of Tennessee held that an illegal strike by the fire fighters of Memphis did not in and of itself constitute a nuisance and would not support a private tort action because the fire fighters had done nothing to directly destroy the plaintiffs' property. Therefore, the court reasoned, the damages were not actionable because they were merely an incidental or a secondary by-product of the illegal strike. *Fulenwider, supra.* In addition to obvious factual distinctions between *Fulenwider* and this case, the destruction of property by fire does not seem to be merely an incidental or secondary by-product of an illegal strike, particularly when it is alleged, as it is here, that the strikers were on the scene and could have

saved the property but for their refusal to act. In Indiana, whether the plaintiffs' injury is an incidental or direct and proximate result of the defendant's misconduct is a question of fact for the jury. *City of Indianapolis v. Bates* (1965), 137 Ind.App. 227, 205 N.E.2d 839. In addition, there can be more than one proximate cause attributed to a particular injury, and "the fact that accidental or innocent causes or conditions and concurring wrongful acts of other parties joined to produce a given injury does not affect the liability of any one of the wrongdoers." *Id.* at 244, 205 N.E.2d at 848 (quoting *Beaning v. South Bend Elec. Co.* (1910), 45 Ind.App. 261, 279, 90 N.E. 786, 793); *see also Ortho Pharmaceutical Corp. v. Chapman* (1979), 180 Ind.App. 33, 388 N.E.2d 541, *trans. denied.*

Our resolution of this issue is in keeping with the accepted principles of summary judgment and appellate review. By construing the facts most favorable to the non-moving party (the Owners), as we are required to do, we have determined that the trial court erred as a matter of law in deciding that the Strikers could not be held liable for damages proximately caused by their conduct. The law does recognize a cause of action against the Strikers, and the facts most favorable to the Owners were sufficient to withstand the Strikers' motion for summary judgment.

ISSUE THREE—Did the trial court err in concluding that, as a matter of law, the Unions could not be held liable for damages?

PARTIES' CONTENTIONS—The Owners contend that the Local, State, and International Unions can be held liable for damages resulting from the strike because the Local Union is liable for the acts of its members and because agents of the State and International Unions participated in or encouraged the actions of the Strikers.

All three Unions respond that they should not be held liable because the individual Strikers are not liable. The State and International Unions argue that they cannot be held liable because mere affiliation of a local with a state or international union does not establish the liability of the latter for the wrongs of the former and there is no evidence that agents of the State or International Unions participated in or encouraged the wrongful acts of the Local.

CONCLUSION—The trial court erred in granting summary judgment for each of the Unions because the Local Union may be held liable for the wrongful acts of its members and the State or International Unions may be held liable if the evidence at trial demonstrates that agents of the State or International participated in or encouraged the wrongful acts of the Strikers.

 As we have concluded that the individual Strikers may be liable for their actions, the law is settled that the Local Union may also be held liable because a union is responsible for the actions of its officers and members under the well-established principles of agency. *Foam & Plastics Div., Tenneco Chems. v. General Drivers* (3rd Cir.1975), 520 F.2d 945. However, mere affiliation of a local union with a state or international organization does not establish the responsibility of the state or international for the wrongs of the local. *United Mine Workers v. Coronado Coal Co.* (1922), 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975; *see also Carbon Fuel Co. v. United Mine Workers* (1979), 444 U.S. 212, 216, 100 S.Ct. 410, 413, 62 L.Ed.2d 394. Instead, it must be demonstrated that the state or international union somehow sanctioned, authorized, ratified, or actually took part in the wrongful conduct through the actions of its agents. *See Carbon Fuel, supra; United Mine Workers, supra.*

The mere fact that agents of the State and International Unions were present at and assisted in the contract negotiations is insufficient to impose liability because it fails to demonstrate culpable conduct. However, there is some disputed evidence that one of the State Union's agents aided, participated in, or sanctioned the wrongful acts by meeting with and encouraging the members of the fire departments of the neighboring communities not to render assistance in the event of a fire in Anderson.

There is also some disputed evidence that one of the International Union's agents may have ratified, sanctioned, or supported the illegal strike by discussing the fund with which the International Union assists striking members.

 Again, we have not concluded that these disputed facts are sufficient to establish liability at trial. Rather, we have merely determined that when the facts are viewed most favorably to the Owners, genuine issues of material fact exist that must be resolved by a jury. Thus, the trial court erred in granting summary judgment for the Unions.

Therefore, the trial court's entry of summary judgment in favor of the City is affirmed while the judgments in favor of the individual Strikers, the Local, State, and International Unions, and their agents are reversed and remanded for further proceedings not inconsistent with this opinion.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.